*C'*

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONALD C. HUTCHINS | ) |
| Plaintiff | ) |
|  | ) |
| v. | ) |
|  | ) |
| ZOLL MEDICAL CORPORATION | ) |
| Defendant | ) |

Civil Action *04 - 30/21 - MAP*

## **COMPLAINT**

## **Parties**

1.)    The plaintiff, Donald C. Hutchins ("Hutchins") is an individual residing at 1047

Longmeadow Street, Longmeadow, Hamden County, Massachusetts and a citizen of the

United States.

2.)    The defendant, Zoll Medical  ("Zoll") is incorporated in the State of Delaware

under the corporate entity ZMD Corporation with a principal place of business at 269

Mill Road, Chelmsford, Massachusetts 01824.


## **Jurisdiction**

3.)    The court has jurisdiction over this matter pursuant to Section 271 U.S.C.

4.)    Hutchins lives in Longmeadow, Massachusetts and is a citizen of the United States.

5.)    The AMD Corporation dba as Zoll Medical is a corporation with its headquarters in

Chelmsford, Massachusetts.

*St. CF*
*LRY.170*
*P1H.*

**Background**

6.)    On November 29, 1994 Hutchins was issued U.S. Reissued Patent Number

Re.34,800-titled "CARDIOPULMONARY RESUSCITATION PROMPTING" attached

herein as part of Exhibit A.  The Patent ABSTRACT states in part, "A portable, self

powered electronic cardiopulmonary resuscitation prompting system. . . ."  This Reissue

Patent Number Re.34,800 is a reissue of Hutchins' original Patent Number 4,583,524 that

was issued November 21, 1984.  Patent Numbers 4,583,524 and Re.34,800 can be found

on over 300,000 CPR Prompting devises that have been marketed since 1984 and

continue today as the standard of the industry.

On June 22, 1999 Hutchins was issued U.S. Patent Number 5,913,685-titled "CPR

Computer Aiding" attached herein as part of Exhibit A.  The Patent ABSTRACT states in

part, "a processing unit responsive to the information signals and for providing output

signals representative of proper steps to be taken in resuscitating the victim . . ."

7.)    Donald C. Hutchins registered CPR prompting software in the form of written

instructions, program printouts and computer disk to the U.S. Copyright Office at the

Library of Congress in 1986.  The copyrighted software included logic, graphics and

voice commands found in Hutchins' U.S. Patent Number 4,583,524 and Reissue Patent

Number Re.34,800 "reduced to practice".

8.)    An article was published in the May 2003 issue of *Product Design and*

*Development,* attached as Exhibit B, describing the gold award winner.  The award was

given to a Chicago based design team and Zoll engineers for the *Zoll AED Plus*, an

automatic external defibrillator with CPR and resuscitation guidance capabilities. The

2

article goes on to say, "To operate it, the user simply turns on the unit and follows simple voice and graphic prompts to assess the situation and perform CPR or defibrillation."

9.)     Zoll has manufactured and marketed automatic defibrillators (AEDs) for many years.  After reading this article, Hutchins recognized that the *"Plus"* of *AED Plus* was the addition of a computer generated voice and graphic prompting system for cardiopulmonary resuscitation (CPR) and that the Plus portion of the AED Plus infringed on Hutchins' U.S. Patent Number 5,913,685.

10.)   To confirm that Zoll is infringing on Patent #5,913,685, Hutchins visited the Zoll corporate web site.  This web site offers extensive information on Zoll including Annual Reports, Quarterly Reports, and Form 10-K.  Each of these Reports speaks of the successful introduction of the *AED Plus* defibrillator and the huge potential for the future.  The web site included an *AED Plus* brochure that Hutchins printed-out that is included herein as Exhibit C.  The brochure offers further evidence that the *AED Plus* infringes on most of the Claims in Patent 5,913,685 through the use of voice and graphic CPR prompting.  The AED Plus also infringes on the networking Claims of Patent 5,913,685 as it states, "Event data, including all machine information, associated with ACG, and audio, are downloaded via a standard IRDA port, found on most desktops.  Data is available on Zoll Data Review or Zoll Data Control archiving and analysis software for medical control, retrospective analysis and reports."

11.)   The Zoll web site is linked to a UCC web site named AED@Home.  UCC is the major distributor of AED Plus and its web site offers further evidence of Zoll's infringement including the AED@Home step by step demo included as Exhibit D.  This

3

video demo when downloaded or printed offers CPR prompts in spoken, graphic and written characters.

12.) The AED@Home web site also offers the AED Plus Administrators Guide and Specifications copied herein as Exhibit E. It is clearly evident that the audio and graphic CPR prompting described in pages 5-12 of the Guide are identical to FIG. 1 of Patent.#5.913,685. It is also evident that the Audio Recording Option on page 12 and the Data Communications functions on page 20 of the Guide are described in FIG. 2 of Hutchins' Patent #5,913,685.

13.) Concerned with this infringement, on April 16, 2003 Hutchins wrote a letter to Richard Packer, the President of Zoll attached herein as Exhibit F. This letter noted that the *AED Plus* infringed upon many Claims of Hutchins' Patent and asked for an exchange of views with the hope of licensing the Patent to Zoll.

14.)   Richard Packer telephoned Hutchins on Monday, May 5, 2003 as noted in Hutchins' appointment book attached as Exhibit G. Hutchins explained that if he allowed Zoll to infringe that other defibrillator manufacturers would do the same and cause Hutchins great financial damage in loss of royalties. The conversation was very congenial and Mr. Packer indicated a desire to talk further about licensing Hutchins' Patent. He did indicate that Zoll had reviewed all of my patents dealing with CPR while in the process of developing *AED Plus*. He said that it was the opinion at Zoll that the AED Plus would not infringe on Patent Number 5,913,685 because the AED Plus used a microprocessor rather than a computer to generate voice and graphic prompting. Hutchins reacted to this explanation by telling Mr. Packer that it was commonly known

4

that a microprocessor is a computer on a chip. Mr. Packer said that he would arrange further discussions.

15.)   Two weeks later Hutchins sent another letter to Richard Packer in which he acknowledged the telephone conversation of May 5th. This letter explained in detail that, "Since the 1970's when VLSI integrated circuits became programmable by combining I/O, memory and the CPU on one chip, these terms have been used interchangeably by designers and patent offices worldwide. When preparing the Patent Application we used phrases like 'personal computer,' 'computer system,' 'computer network,' and 'computer program' in our Claims to widen the scope of the Patent." (It should be noted here that even if one accepts Richard Packer's and his Development Department's incorrect assumption that a microprocessor is not a computer chip, the AED Plus is infringing on Hutchins' older Patent Numbers 4,583,524 and Re.34,800. These two patents are well recognized in the CPR industry as operative. Both patents clearly refer to microprocessors as the controlling components for CPR prompting which places the AED Plus in the condition of infringing.)

16.)   After not hearing anything from Zoll for a period of over 2 months, Hutchins received a telephone call from Gary Freeman who announced that he had recently been hired to manage the intellectual properties of Zoll. He followed this with an e-mail message asking that Hutchins visit the Zoll headquarters to discuss, "licensing of your CPR Prompt patents." This e-mail is attached as Exhibit H.

17.)   Hutchins replied with a letter to Gary Freeman attached herein as Exhibit I in which he suggests that, "Pages 2,7, 8, and 9 of Patent 5,913,685 teach the automatic recording of rescue data such as date, time, type and duration of each rescue procedure. This is the

same information that Zoll's *Rescue Net*™ database captures. Claims 20, 36 and 43 of the Patent would furnish both hardware and software-code protection to ZOLL for automatic methods of capturing this database."

18.) On August 20, 2003 Don Hutchins met with Gary Freeman at Zoll Headquarters at 269 Mill Road, Chemsford MA as confirmed in the attached Exhibit J. During this meeting Gary Freeman told Hutchins that Mr. Packer was not well versed in electronics. Mr. Freeman agreed with Hutchins' contention to Packer that a computer chip controlled the *AED Plus*. This computer executed the voice, graphic and character CPR prompting as well as the data communications functions using software programmed by Zoll engineers.

19.) Hutchins' patent attorney Chuck Hieken and Zoll's patent attorney Roger Lee are both partners in the law firm of Fish & Richardson. During this meeting of August 20th Gary Freeman asked Hutchins to allow Attorney Lee to review Patent Number 5,913,685 as a consultant to Zoll. He suggested that Attorney Hieken join Attorney Lee to gain a mutual understanding of the Patent's Claims and value to Zoll. Hutchins said that he would discuss Freeman's request with Attorney Hieken.

20.) When Hutchins told Attorney Hieken about Gary Freeman's request to consult with Attorney Lee, Attorney Hieken declined to participate because he felt that there would be a conflict in interest. He also cautioned Hutchins that Richard Packer, the President of Zoll would probably use Attorney Lee to buttress claims that the *AED Plus* was not infringing on Hutchins' Patent.

21.) A series of e-mails from Gary Freeman to Hutchins herein attached as Exhibit K resulted in an Agreement written by Zoll. The Agreement recognized that, "ZOLL and

HUTCHINS were interested in exploring the possibility in which ZOLL would acquire rights under one or more patents . . . . HUTCHINS agrees that ZOLL may engage G. Roger Lee and others at Fish & Richardson to undertake an evaluation of the merits of Hutchins' patents."

22.)  On September 24, 2003 Hutchins received an e-mail from Gary Freeman attached herein as Exhibit L.  The e-mail said in part, "Roger will now be able to begin the analysis, which I would imagine may take as long as a month or so.  At that point we can discuss in detail all the patent and business issues.  I'll keep you up to date as things proceed with Roger's work. Best Regards, Gary"

23.)  Hutchins has had no communication from Zoll since Freeman's e-mail of September 24, 2003 nor has there been any communication from Zoll's patent attorney Roger Lee.

24.)  Well over a year has passed since April 16, 2003 when Hutchins wrote his first letter to Richard Packer, the President of Zoll attached herein as Exhibit F to inform Zoll that the *AED Plus* infringed most of the Claims contained in Patent Number 5,913,685.

25.)  The 2003 Zoll Annual Report contains a letter to shareholders from Richard A. Packer, who is listed as Chairman and Chief Executive Officer of Zoll herein attached as Exhibit M.  This letter states, "ZOLL's performance during fiscal 2003 was outstanding. For the fifth consecutive year, we posted an increase in overall sales of 22.9% (to $184.6 million). Earnings grew to record levels (to 12.9 million). We ended the year with no debt and $60.8 million in cash and short term investments. . . .The strong year included two accomplishments with which we are particularly pleased.  In November 2002, the US military awarded an $8.9 million sole source contract . . . The second accomplishment

was the sales performance of our new *AED Plus*, which reached $18.8 million across the U.S. and international markets. . .As the only automated external defibrillator on the market that gives rescuers instantaneous CPR feedback, the *AED Plus* stands out from the competition and continues to gain acceptance."

26.) Packer's letter goes on to say, "ZOLL was successful due to strong inroads made with the *AED Plus* and accelerating acceptance of *RescueNet*™ -- the only integrated EMS information management system on the market. EMS personnel use this system to automate data captured in the field, allowing them to improve resuscitation efforts."

27.) The 2003 Annual Report makes it clear that *AED Plus* and *RescueNet* are the most promising and lucrative products in the Zoll portfolio. *AED Plus* and *RescueNet* are two products produced by Zoll that infringe on Hutchins' Claims contained in Patent Number 5,913,685.

28.) These allegations are testified to and supported by an affidavit by Donald C. Hutchins included herein as Exhibit N.

### Count I

### (Copyright Infringement)

29.)    Hutchins adopts by reference the allegations of paragraphs 1 through 28.

30.)    The software design of Zoll's *AED Plus* violates the Copyright Act of 1976 with the use of a series and images and voice commands originally created as algorithms used for CPR Prompting software copyrighted by Hutchins.

31.)    Such terms as "Are you OK" and "Call for help" and graphic instructions depicting proper compressions, opening of airways, chin lifts and breathing are identical to the series of images created by Hutchins in his copyrighted material.

32.)    Zoll has used Hutchins' copyrighted expression in the *Plus* addition to *AED Plus* in violation of the Copyright Act of 1976.  Zoll engineers knew of Hutchins' speech and graphic CPR prompting software because this software controls the *CPR Prompt®* Rescue Aid.  Over 300,000 *CPR Prompt®* units have been sold in the past 18 years.

## **Count II**

### (Breach of Contract)

33.)    Hutchins adopts by reference the allegations of paragraphs 1 through 32.

34.)    During Hutchins' telephone conversation with Richard Packer on May 5, 2003, it was agreed that Zoll would welcome a licensing agreement with Hutchins.

35.)    At a meeting between Hutchins and Gary Freeman at Zoll Headquarters on August 20, 2003, Mr. Freeman contracted with Hutchins to supply data necessary for the license agreement and committed Zoll to finance the cost of a patent investigation by the law offices of Fish & Richardson.

36.)    Zoll sent a contract to Hutchins for signature to allow Attorney Lee and the Fish & Richardson staff to evaluate Hutchins' intellectual properties related to voice and graphic CPR prompting that would be incorporated in a license to Zoll.

37.)    On September 24, 2003 after Hutchins had signed the Fish & Richardson contract, Gary Freeman sent an e-mail that acknowledged the contract.  It stated that Attorney Lee would begin instrumentation of the Fish & Richardson agreement that would lead to the final license.

38.)    A year has passed since Zoll agreed to negotiating a license rather than facing infringement action from Hutchins.  Zoll has breached its verbal contract to negotiate in good faith with Hutchins.  Zoll has also breached the written contract for Attorney Lee's

services to expedite a final license.  These delays have prevented Hutchins' from

exercising his right to damages from Zoll for infringing Patent #5,913,685.  It has also

encouraged other defibrillator manufactures to include Hutchins' inventions in their

products.

### Count III

(Patent Infringement by Means of Sales)

39.)    Hutchins adopts by reference the allegations of paragraphs 1 through 38.

40.)    Zoll has infringed Claims 1, 2, 3, 4, 6, 8 of Patent #5,913,685 through the

development and sale of a defibrillator called *AED Plus*.  Since its introduction to market

in the year 2002, the *"Plus"* to Zoll's automatic defibrillator has been software

programming that provides guidance to rescue personnel trained in CPR, comprising an

electroacoustical transducer (speaker), processing unit for input signals (keying means),

processing unit for output signals (sound and graphics).  Should the microprocessors

contained in the *AED Plus* devise not be defined as computer chips by the Court,

Hutchins petitions the Court to apply Claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 14, of

Hutchins' Patent Number Re.34,800 to this Complaint and substituted in this Complaint

for those Claims cited in Hutchins' Patent #5,913,685.

41.)    In a letter to stockholders that appears in the 2003 Annual Report, Zoll's President

Richard Packer writes that the sales of our new *AED Plus* reached 18.8 million dollars.

### Count IV

(Patent Infringement by Means of Manufacture)

42.)    Hutchins adopts by reference the allegations of paragraphs 1 through 41.

43.)    Zoll has infringed Claims 21, 22, 23, 24, 25, 26, and 28 of Patent #5,913,685

through the manufacture of a defibrillator called *AED Plus*. Since its introduction to

market in the year 2002, the *"Plus"* to Zoll's automatic defibrillator has been computer

(microprocessor) program code that provides guidance to rescue personnel trained in

CPR, comprising an electroacoustical transducer (speaker), processing unit for input

signals (icon keying), processing unit for output signals (vocal instructions and acoustical

speaker). Should the microprocessors contained in the *AED Plus* devise not be defined as

computer chips by the Court, Hutchins petitions the Court to apply Claims 1, 2, 3, 4, 6, 7,

8, 9, 10, 11, 12, 14, 15, 14, of Hutchins' Patent Number Re.34,800 to this Complaint and

substituted in this Complaint for those Claims cited in Hutchins' Patent #5,913,685.

44.)    Zoll manufactures the *AED Plus* to be used in direct sales to the military and

through a distribution network controlled by Zoll.

## Count V

### (Patent Infringement by Means of Computer Program)

45.)    Hutchins adopts by reference the allegations of paragraphs 1 through 44.

46.)    Zoll has infringed Claims 31, 32, 33, 34, 35 and 36 of Patent #5,913,685 through

the addition of computer functions to an automatic defibrillator called *AED Plus*. These

functions include information output signals, guidance signals described in Claim 31.

Visible signals claimed in Claim 32 that are synchronized with audible signals as Claim

33. Storage of this program, the algorithms, and functions are claimed by Hutchins in

Claim 36.

## Count VI

(Patent Infringement by Means of a Computer Network, Output,
Transmission, Record Keeping and Storage)

47.)     Hutchins adopts by reference the allegations of paragraphs 1 through 46.

48.)     Zoll has infringed Claims 13, 36 and 43 of Patent #5,913,685 by including what

Zoll refers to as *Rescue Net*. *Rescue Net* is a feature of the *AED Plus* and Zoll's network

servers that automatically record rescue data such as date, time, type and duration of each

rescue procedure. This data is placed in memory to be downloaded through a standard

IRDA personal computer port and stored in network computers to be archived as medical

and insurance records. These functions are claimed in Claims 13, 36 and 43 and easily

understood by viewing FIG 2 of Patent #5,913,685.


WHEREFORE, (Hutchins) prays that judgment be entered in his favor as

follows:


(a)     On Count I, that a judgment be entered against the Defendant in the sum

of $120,000 plus interest and costs as fixed by the Court.

(b)     On Count II, that a judgment be entered against the Defendant in the sum

of $80,000 plus interest and costs as fixed by the Court.

(c)     On Count III, that a judgment be entered against the Defendant in the sum

of $2,150,000 plus interest and costs as fixed by the Court. This figure

represents a 5% royalty payment on the *AED Plus* total sales of $43,000,000 as reported by Zoll for the years 2002, 2003 and 2004.

(d)    On Count IV, that a judgment be entered against the Defendant in the sum of $2,150,000 plus interest and costs as fixed by the Court. This figure represents a 5% royalty payment on the *AED Plus* total sales of $43,000,000 as reported by Zoll for the years 2002, 2003 and 2004.

(e)    On Count V, that a judgment be entered against the Defendant in the sum of $2,150,000 plus interest and costs as fixed by the Court. This figure represents a 5% royalty payment on the *AED Plus* total sales of $43,000,000 as reported by Zoll for the years 2002, 2003 and 2004.

(f)    On Count VI, that a judgment be entered against the Defendant in the sum of $430,000 plus interest and costs as fixed by the Court. This figure represents a 5% royalty payment on the total sales of the *Rescue Net* Systems of $8,600,000 as reported by Zoll for the years 2003 and 2004.

(g)    That Donald C. Hutchins or his estate be granted 5% in royalty payments for all future sales of Zoll products that utilize Hutchins' intellectual properties.

(h)    The infringement was willful on the part of Zoll and continued after notification by Hutchins and without any belief by Zoll that Hutchins' Patents #4,583,524, #Re34,800 and #5,913,685 were not valid. That Zoll contemptuously infringed on Hutchins' intellectual properties with the mistaken belief that Hutchins, as "the little guy," could not afford the legal costs to protect these properties through the federal court system. On any

13

and all Counts that a judgment be entered against the Defendant to

increase damages up to three times the damages assessed in accordance

Title 35 United States Code, Section 285.

49.)    Demand for Trial by Jury.

The Plaintiff, DONALD C. HUTCHINS, Pro Se

Dated: _6/22/04_

1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 734-2625
(413) 739-4060 (facsimile)

## CERTIFICATE OF SERVICE

I, Richard J. Moriarty, 43 Greenacre Avenue, Longmeadow, Massachusetts
01106, hereby certify that I served a copy of the foregoing on the appropriate party by
sending a copy by registered mail to: Zoll Medical, 269 Mill Road, Chelmsford,
Massachusetts 01824, Attn: Mr. Richard A. Packer, Chief Executive Officer.

Dated: _6/33/04_

Richard J. Moriarty

US005913685A

# United States Patent [19]

## Hutchins

| [11] | Patent Number: | 5,913,685 |
| [45] | Date of Patent: | Jun. 22, 1999 |

[54] **CPR COMPUTER AIDING**

[76] Inventor: **Donald C. Hutchins**, 60 Brookdale Dr., Springfield, Mass. 01104

[21] Appl. No.: **08/667,946**

[22] Filed: **Jun. 24, 1996**

[51] Int. Cl.⁶ ................................................. G09B 23/28
[52] U.S. Cl. .......................................................... 434/265
[58] Field of Search ................................ 434/262, 265, 434/307 R, 308, 323

[56]                **References Cited**

### U.S. PATENT DOCUMENTS

| Re. 34,800 | 11/1994 | Hutchins | 128/898 |
| 1,918,041 | 7/1933 | Knapke . | |
| 3,520,071 | 7/1970 | Abrahamson et al. | 35/17 |
| 3,552,036 | 1/1971 | Mahler | 35/17 |
| 3,736,363 | 5/1973 | Baessler et al. | 35/17 |
| 4,000,565 | 1/1977 | Overby et al. | 35/35 A |
| 4,016,540 | 4/1977 | Hyatt | 340/172.5 |
| 4,020,468 | 4/1977 | Silver et al. | 340/172.5 |
| 4,023,276 | 5/1977 | Furukawa et al. | 33/1 C |
| 4,052,798 | 10/1977 | Tomita et al. | 35/9 A |
| 4,060,915 | 12/1977 | Conway | 35/9 A |
| 4,094,079 | 6/1978 | Dorsett | 35/8 A |
| 4,095,590 | 6/1978 | Harrigan | 128/24 R |
| 4,101,883 | 7/1978 | Hempenius et al. | 340/365 R |
| 4,110,918 | 9/1978 | James et al. | 35/22 R |
| 4,193,064 | 3/1980 | Snyder | 340/309.4 |
| 4,290,114 | 9/1981 | Sinay | 364/900 |
| 4,302,193 | 11/1981 | Haynes | 434/178 |
| 4,307,728 | 12/1981 | Walton | 128/687 |
| 4,331,426 | 5/1982 | Sweeney | 434/265 |
| 4,360,345 | 11/1982 | Hon | 434/262 |
| 4,370,983 | 2/1983 | Lichtenstein | 128/630 |
| 4,420,813 | 12/1983 | Inoue et al. | 364/513 |

(List continued on next page.)

### FOREIGN PATENT DOCUMENTS

| 0 186 713 | 7/1986 | European Pat. Off. . |

| 3638-192 | 5/1988 | Germany . |
| 57-8418 | 1/1982 | Japan . |
| 501-409 | 4/1976 | U.S.S.R. . |
| WO 91/15007 | 10/1991 | WIPO . |
| WO 91/15267 | 10/1991 | WIPO . |

### OTHER PUBLICATIONS

"ADA Directions" newsletter, vol. II, Issue 2 & 3, Summer & Fall 1995.

*Primary Examiner*—Robert A. Hafer
*Assistant Examiner*—John Edmund Rovnak
*Attorney, Agent, or Firm*—Fish & Richardson P.C.

[57]                **ABSTRACT**

A cardiopulmonary resuscitation (CPR) aiding computer system provides guidance to rescue personnel trained in CPR for resuscitating a victim under an emergency condition. The system includes an input for entering information signals representative at least of characteristics of the victim relevant to proper performance of CPR techniques, a processing unit responsive to the information signals and for providing output signals representative of proper steps to be taken in resuscitating the victim, and an output, including a display, responsive to the output signals and for providing guidance signals, which include visible signals, such as animated images, on the display, of the proper steps to be taken by the rescue personnel in resuscitating the victim. In one embodiment, the output includes an audio system for producing audible guidance in response to the output signals, wherein the speech guidance is synchronized with the visible guidance. The system can be configured as a personal computer, or as a network of terminals and computers.

**43 Claims, 13 Drawing Sheets**

Microfiche Appendix Included
(1 Microfiche, 36 Pages)



**5,913,685**

Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,457,312 | 7/1984 | Ornato et al. | 128/711 |
| 4,472,146 | 9/1984 | Weissbrod | 434/365 |
| 4,489,387 | 12/1984 | Lamb et al. | 364/514 |
| 4,510,942 | 4/1985 | Miyamae et al. | 128/680 |
| 4,531,310 | 7/1985 | Acson et al. | 40/1.5 |
| 4,583,524 | 4/1986 | Hutchins | 128/1 R |
| 4,588,383 | 5/1986 | Parker et al. | 434/265 |
| 4,797,104 | 1/1989 | Laerdal et al. | 434/263 |
| 4,863,385 | 9/1989 | Pierce | 434/263 |
| 5,088,037 | 2/1992 | Battaglia | 364/413.01 |
| 5,223,828 | 6/1993 | McKiel, Jr. | 340/825.19 |
| 5,239,988 | 8/1993 | Swanson et al. | 128/28 |
| 5,305,374 | 4/1994 | Snyder | 379/88.06 |
| 5,345,705 | 9/1994 | Lawrence | 40/616 |
| 5,365,686 | 11/1994 | Scott | 40/455 |
| 5,394,892 | 3/1995 | Kenny et al. | 128/897 |
| 5,409,380 | 4/1995 | Balbuena et al. | 434/112 |
| 5,412,189 | 5/1995 | Cragun | 235/379 |
| 5,417,574 | 5/1995 | Raynes | 434/112 |

**Copy provided by USPTO from the PIRS Image Database on 04-17-2003**



FIG. 1



FIG. 2



FIG. 3