# AGREEMENT

Whereas ZOLL Medical Corporation, of _____ ("ZOLL"), and

Donald C. Hutchins, of _____, Hutchins Tool & Engineering Co.,

and CPR Prompt Corporation (hereinafter collectively, "HUTCHINS") are interested in

exploring the possibility of an agreement in which ZOLL Medical Corporation would

acquire rights under one or more patents or patent applications owned by HUTCHINS

and generally relating to devices for assisting rescuers in performing CPR ("the Hutchins

Patents");

Whereas both ZOLL and HUTCHINS are presently represented in some

intellectual property matters by Fish & Richardson P.C. ("F&R");

Whereas ZOLL is principally represented at F&R by G. Roger Lee, and

HUTCHINS is principally represented by Charles Hieken (both Mr. Lee and Mr. Hieken

are principals of F&R).

Whereas ZOLL is desirous of having F&R and G. Roger Lee evaluate the merits

of the Hutchins Patents; and

Whereas ZOLL and HUTCHINS have learned that F&R needs to have the

informed consent of HUTCHINS before it can undertake that evaluation.

The parties agree as follows:

HUTCHINS agrees that ZOLL may engage G. Roger Lee and others at F&R

working under Mr. Lee's direction to undertake an evaluation of the merits of the

Hutchins patents, and to give ZOLL advice related to the value of the Hutchins patents

("the evaluation and advice").

ZOLL agrees to communicate with F&R to obtain the evaluation and advice, and to ask F&R to keep the work it does confidential from Charles Hieken;

HUTCHINS acknowledges that the evaluation and advice provided to ZOLL may possibly be directly contrary to his interests, and that F&R and G. Roger Lee will not be representing the interests of HUTCHINS in providing the evaluation and advice, but will instead be representing the interests of ZOLL.

HUTCHINS acknowledges that he has had an opportunity to consult with counsel as to the advisability of giving F&R consent to provide the evaluation and advice.

ZOLL MEDICAL CORPORATION

Date : _____    By: _____
                                  Its:

HUTCHINS TOOL & ENGINEERING CO.

Date: _____    By: _____
                                  Its:

CPR Prompt Corporation

Date: _____    By: _____
                                  Its:

Date: _____    _____
                                  Donald C. Hutchins

2003 was outstanding. For the fifth consecutive year, we posted an increase in overall sales of 22.9% (to $184.6 million). Earnings grew to record levels (to 12.9 million). We ended the year with no debt and $60.8 million in cash and short term investments. . . .The strong year included two accomplishments with which we are particularly pleased. In November 2002, the US military awarded an $8.9 million sole source contract . . . The second accomplishment was the sales performance of our new AED Plus, which reached $18.8 million across the U.S. and international markets. . .As the only automated external defibrillator on the market that gives rescuers instantaneous CPR feedback, the AED Plus stands out from the competition and continue to gain acceptance."

22.    Packer's letter goes on to say, "ZOLL was successful due to strong inroads made with the AED Plus and accelerating acceptance of RescueNet™ – the only integrated EMS information management system on the market. EMS personnel use this system to automate data captured in the field, allowing them to improve resuscitation efforts."

23.    The 2003 Annual Report makes it clear that *AED Plus* and *RescueNet* are the most promising and lucrative products in the Zoll portfolio. *AED Plus* and *RescueNet* are two products produced by Zoll that infringe on I' Claims contained in Patent Number 5,913,685.

FURTHER AFFIANT SAYETH NAUGHT.

_____
DONALD C. HUTCHINS

L



Menu  Compose  Search          Personal Account Options...          Help  Logout

**dchcpr's**
**Main Mail**

- Print
- Header

Message 17 of 25   ⌄

FROM:  Gary Freeman <GFreeman@zoll.com> | Save Address
DATE:  Wed, 24 Sep 2003 17:00:22 -0400
TO:  <dchcpr@map.com>
SUBJECT:  RE: FW: Hutchins

Hi Don,

I received the signed copies of the acknowledgment. I'll send back a fully
signed copy to you tomorrow.

Roger will now be able to begin the analysis, which I would imagine may take
as long as a month or so. At that point, we can discuss in detail all the
patent and business issues.

I'll keep you up to date as things proceed with Roger's work.

Best Regards,

Gary

Gary Freeman
V.P. Clinical Affairs
ZOLL Medical
269 Mill Rd.
Chelmsford, MA 01824
800-348-9011 x9370
Fax 978-421-0007
Cell 617-504-7346

-----Original Message-----
From: Donald Hutchins [mailto:dchcpr@map.com]
Sent: Thursday, September 18, 2003 1:43 PM
To: Gary Freeman
Subject: Re: FW: Hutchins

Gary, I have read Attorney Lee's F&R Agreement and would be happy to sign it
for myself, Hutchins Tool and the CPR Prompt Corporation as listed.

Attorney Lee's "CPR" should the the CPR Prompt Corporation. I would like to
note that any Agreement with Zoll would be only in the name of Donald C.
Hutchins because I personally own the Patent. Hutchins Tool and the CPR
Prompt Corporation have no letgal or financial interest in the Patent.
    I would also ask that I be able to respond to you after you receive the
evaluation from Attorney Lee. If possible I would be happy to sit with you
and Attroney Lee so that any issues could be fully aired. My goal in
addition to answering Attorney Lees evaluation would be to expain features
that may not be evident to him to allow him to respond and agree or disagree
as to their value to Zoll.
    As I have told you, I have read the two patents that you sent to me. I
can give you my evaluation of these patents. I suggest that Attorney Lee
also become familiar with these two patents. I consider them relevant to
the value of my Patent to Zoll or of my Patent to Medtronic or others if
Zoll elects to pass on an agreement with me.
    Please get the F&R agreement to me so we can get started. Thanks, Don
Hutchins

---------- Original Message ----------------------------------
From: Gary Freeman <GFreeman@zoll.com>
Date: Thu, 18 Sep 2003 09:21:05 -0400

>Hi Don,
>
>I've spoken with Roger Lee about Chuck's unwillingness to draft a
>corresponding letter for your signature, and he has told me that we will
>need to each sign the attached agreement, which basically just says that
>Roger is going to be looking at the patents in question and that you agree
>to this. (I've attached Roger's response below.)
>
>Hopefully this is acceptable to you so that we can proceed forward.
>
>If you have any concerns, please give me a call.
>

Main Mail: dchcpt@mail.map.com                    http://mail.map.com/xad?s9095cc989dc99099006/atedmail.59481 cg ..

>Best Regards,
>
>Gary
>
>Gary Freeman
>V.P. Clinical Affairs
>ZOLL Medical
>269 Mill Rd.
>Chelmsford, MA 01824
>800-348-9011 x9370
>Fax 978-421-0007
>Cell 617-504-7346
>
>
>Gary,
>
>What I propose is that ZOLL and Hutchins enter into an agreement along
>the lines of what I have attached. Once Hutchins and ZOLL have
>entered into this agreement, F&R will have the consent it needs to
>provide ZOLL with advice. Chuck Hieken does not need to be involved,
>and it will be up to Hutchins to decide what he wants to do, and
>whether he wants to involve Chuck or another attorney in deciding
>whether to enter into the agreement. I've written the agreement to
>identify three parties on the Hutchins side: Hutchins Tool &
>Engineering Co. (the entity F&R lists as the client, but perhaps not
>the relevant corporation for the CPR stuff), Donald Hutchins as an
>individual, and a possible third corporation, as I seem to recall that
>he may have a corporation with CPR in the name. If he indicates that
>not all three are needed, that's fine, as long as we have him,
>individually, and the corporation(s) that are doing the work in the
>CPR area. I would prefer, however, to have Hutchins Tool &
>Engineering on the agreement.
>
>Roger
>
>
>
>
>

Summary | Prev | Next

Reply | Reply All | Forward | Delete

Move to >>  Draft       ⌃

N



Reaching New Heights
In Resuscitation

2003 ANNUAL REPORT

ZOLL

# Dear Shareholders,

ZOLL's performance during fiscal 2003 was outstanding. For the fifth consecutive year, we posted an increase in overall sales of 22.9% (to $184.6 million). Earnings grew to record levels (to $12.9 million or $1.40 per diluted share). We ended the year with no debt and $60.8 million in cash and short-term investments. Our performance remained strong despite lower customer spending in the Hospital and Public Safety markets. Additionally, we completed a number of transactions that will strengthen our product portfolio and allow ZOLL to take advantage of new opportunities in resuscitation.

The strong year included two accomplishments with which we are particularly pleased. In November 2002, the U.S. military awarded an $8.9 million sole-source contract—the single largest order in ZOLL's history—choosing the M Series CCT as the standard for its transport defibrillators. We received additional follow-on orders throughout the year. This contract clearly highlights ZOLL's leadership in defibrillation.

The second accomplishment was the sales performance of our new AED Plus, which reached $18.8 million across U.S. and international markets. This level represents approximately 10% of the rapidly growing worldwide AED market. As the only automated external defibrillator on the market that gives rescuers instantaneous CPR feedback, the AED Plus stands out from the competition and will continue to gain acceptance.

## GROWTH IN ALL MARKET SEGMENTS

Sales in the international segment were exceptional, increasing 38.8% (to $46.1 million). These results reflect our continued investments in direct operations, which gained traction in the United Kingdom, the Netherlands, Germany, France, Canada, and Australia. We continue to invest in sales personnel to manage our distribution network, with employees in China, India, and Russia being our newest additions.

Sales in the U.S. Hospital market increased 25.4% (to $63.6 million). Despite a slowdown in hospital spending, ZOLL's presence has remained strong thanks to our superior technology and diverse product line. From the most basic AED Plus for early defibrillation programs, to the sophisticated M Series CCT for critical care transport, ZOLL's products address key market needs, allowing us to remain the choice of leading medical centers nationwide.

ZOLL Medical Corporation, with worldwide headquarters in Chelmsford, Massachusetts, designs, manufactures, and markets resuscitation solutions. Pacing and defibrillation devices, including ZOLL's M Series and AED Plus™, and LIFECOR, Inc.'s LifeVest™ Wearable Defibrillator; and circulatory assist devices such as Advanced Circulatory Systems, Inc.'s ResQPOD™ Circulatory Enhancer for Cardiac Arrest and Revivant Corporation's AutoPulse™ Resuscitation System; are used by health-care professionals, emergency medical service providers, and first responders to diagnose and treat cardiac arrest wherever it may occur. ZOLL also designs and markets software that automates the collection and management of both clinical and non-clinical data. ZOLL has operations in the United States, Canada, the United Kingdom, Germany, France, the Netherlands, Australia, and business partners in all of the world's major markets.

# Customers and Employees:

In the U.S. Public Safety market (EMS, Fire, and Police) sales reached record levels of $47.0 million, increasing 5.4%, despite continued budgetary woes at the state and local levels that constrained spending. ZOLL was successful due to strong inroads made with the AED Plus™ and accelerating acceptance of RescueNet™—the only integrated EMS information management system on the market today. EMS personnel use this system to automate data captured in the field, allowing them to improve overall resuscitation efforts.



**MILESTONES IN RESUSCITATION LEADERSHIP**

As we highlighted last year, our vision for the future of ZOLL includes broadening our product portfolio beyond traditional defibrillation and pacing equipment. We see the opportunity to fill more niches within defibrillation, as well as to move "beyond the shock" into other types of products that help improve survival rates. Our first step in fiscal 2002 was to focus on improving CPR with our AED Plus product. In fiscal 2003, we announced three new initiatives to further realize our vision.

- In November 2002, ZOLL and LIFECOR, Inc. agreed to sell the LifeVest™ Resuscitation System to hospitals in North America. LifeVest is the only FDA-approved automated defibrillator to be worn outside the body rather than implanted in the chest. It has the unique ability to provide automatic and virtually immediate defibrillation after detecting a life-threatening arrhythmia. This product fills the need for temporary high-level protection of specific patients within a hospital.

- In January 2003, ZOLL and Advanced Circulatory Systems, Inc. (formerly ResQSystems, Inc.) agreed to bring the ResQPOD™ Circulatory Enhancer for Cardiac Arrest to market. In clinical trials, ResQPOD circulated up to two times as much blood to vital organs when compared to CPR without the ResQPOD. This simple, disposable device integrates easily into a rescuer's standard resuscitation routine.

- In August 2003, ZOLL announced an agreement with Revivant Corporation to help commercialize the AutoPulse™, which automates chest compressions for more effective CPR. In clinical trials, the FDA-approved AutoPulse has been shown to significantly increase blood flow to the brain and heart in cardiac arrest victims. AutoPulse has the potential to set ZOLL apart from the competition by redefining how resuscitation is accomplished. The agreement with Revivant anticipates ZOLL's acquisition of this revolutionary technology by October 2004.

**FISCAL 2004: REDEFINING RESUSCITATION**

In fiscal year 2004, ZOLL will expand our presence in all markets and continue to broaden our product offering beyond defibrillation. We will invest heavily in expanding our distribution networks and advancing resuscitation technology. These efforts will serve us well as we work to deliver tools that help increase survival and allow us to continue our strong growth. We want to thank our investors, customers, and employees who believe in our approach to improving resuscitation. We appreciate your support.

Sincerely,

Richard A. Packer
Chairman and Chief Executive Officer
December 2003

N





UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br><br>    Plaintiff )<br><br>v. )<br><br>ZOLL MEDICAL CORPORATION )<br><br>    Defendant ) | **AFFIDAVIT OF**<br>**DONALD C. HUTCHINS** |

NOW COMES DONALD C. HUTCHINS and upon being duly sworn,
states that:

1.    I am over 18 years of age and have personal knowledge of the matters attested to
herein.

2.    On November 29, 1994 I was issued U.S. Reissue Patent Number Re34,800-titled
"CARDIOPULMINARY RESUSCITATION PROMPTING". The Patent
Abstract states in part, "A portable, self powered electronic cardiopulmonary
resuscitation prompting system . . ." This Reissue Patent Number Re34 ,800 is a
reissue of my original Patent 4,583,524, that was issued November 21, 1984.

3.    Patent Numbers 4,583,524 and Re.34,800 can be found on over 300,000 CPR
Prompting devises that been marketed since 1984 and continue today as the
standard in the industry. It is significant that all of these 300,000 devices use
simple 4-bit and 8-bit processors to control the device and produce the audible
speech commands.

4.    On June 22, 1999 I was issued U.S. Patent Number 5,913,685-titled "CPR
Computer Aiding". The Patent ABSTRACT states in part, "a processing unit
responsive to the information signals and for providing output signals
representative of proper steps to be taken in resuscitating the victim . . ."

5.    It is important to note that Patent Number 5,913,685 teaches the use of
      sophisticated microprocessors that are considered in the industry to be
      microcomputers or "computers on a chip". These processors are used to control
      an array of electronic devises such as cell phones, personal computers or network
      servers.

6.    I registered CPR prompting software in the form of written instructions, program
      printouts and computer disk to the U.S. Copyright Office at the Library of
      Congress in 1986. The copyrighted software included logic, graphics and voice
      commands found in my U.S. Patent #4,583,524 "reduced to practice".

7.     An article was published in the May 2003 issue of *Product Design and
      Development* describing the gold award winner. The award was given to a
      Chicago based design team and Zoll engineers for the *Zoll AED Plus*, an
      automatic external defibrillator with CPR and resuscitation guidance capabilities.
      The article goes on to say, "To operate it, the user simply turns on the unit and
      follows simple voice and graphic prompts to assess the situation and perform CPR
      or defibrillation."

8.    Zoll has manufactured and marketed automatic defibrillators (AEDs) for many
      years. After reading this article, I recognized that the "*Plus*" of *AED Plus* was the
      addition of a computer generated voice and graphic prompting for
      cardiopulmonary resuscitation (CPR) and that the Plus portion of the *AED Plus*
      infringed on my U.S. Patent Number 5,913,685.

9.    To confirm that Zoll is infringing on Patent #5,913,685, I visited the Zoll
      corporate web site. This web site offers extensive information on Zoll including
      Annual Reports, Quarterly Reports, and Form 10-K. Each of these Reports
      speaks of the successful introduction of the *AED Plus* defibrillator and the huge
      potential for the future. The web site included an *AED Plus* brochure that I
      printed-out. The brochure offers further evidence that the *AED Plus* infringes on
      most of the Claims in Patent 5,913,685 through the use of voice and graphic CPR
      prompting. The *AED Plus* also infringes on the networking Claims of Patent
      5,913,685 as it states, "Event data, including all machine information, associated
      with ACG, and audio, are downloaded via a standard IRDA port, found on most

2

desktops. Data is available on Zoll Data Review or Zoll Data Control archiving and analysis software for medical control, retrospective analysis and reports."

10.    The Zoll web site is linked to a UCC web site named AED@Home. UCC is the major distributor of *AED Plus* and its web site offers further evidence of Zoll's infringement including the AED@Home step by step demo. This video demo when downloaded or printed offers CPR prompts in spoken, graphic and written characters.

11.    The AED@Home web site also offers the *AED Plus Administrators Guide and Specifications*. It is clearly evident that the audio and graphic CPR prompting described in pages 5-12 of the Guide are identical to FIG. 1 of the Patent. It is also evident that the Audio Recording Option on page 12 and the Data Communications functions on page 20 of the Guide are described in FIG. 2 of Patent #5,913,685.

12.    Concerned with this infringement, on April 16, 2003 I wrote a letter to Richard Packer, the President of Zoll. This letter noted that the *AED Plus* infringed upon many Claims of my Patent and I asked for an exchange of views with the hope of licensing the Patent to Zoll. My feeling was that it would be far better to license Zoll than to challenge them with time wasting and costly litigation.

13.    Richard Packer telephoned me on Monday, May 5, 2003 as noted in my appointment book. I explained that if I allowed Zoll to infringe that other defibrillator manufacturers would do the same and cause me great financial damage in loss of royalties. The conversation was very congenial and Mr. Packer indicated a desire to talk further about licensing my Patent. He was familiar with the CPR Prompt® a electronic speech device that I invented and licensed to a company called County Line Limited in 1994. He also said that Zoll had reviewed all of my patents dealing with CPR while in the process of developing *AED Plus*. He said that it was the opinion at Zoll that the *AED Plus* would not infringe on Patent Number 5,913,685 because the *AED Plus* used a processor rather than a computer to generate voice and graphic prompting. I reacted to this explanation by telling Mr. Packer that it was commonly known that a

microprocessor is a computer on a chip. Mr. Packer ended the telephone conversation by saying that he would arrange further discussions.

14. Two weeks later I sent another letter to Richard Packer in which I acknowledged the telephone conversation of May 5th. This letter explained in detail that, "Since the 1970's when VLSI integrated circuits became programmable by combining I/O, memory and the CPU on one chip, the terms microprocessor and computer chip have been used interchangeably by designers and patent offices worldwide. When preparing the Patent Application we used phrases like 'personal computer,' 'computer system,' 'computer network,' and 'computer program' in our Claims to widen the scope of the Patent."

15. Even if Mr. Packer and the Zoll engineers who developed the *AED Plus* were honestly misinformed in thinking that the processors used on that devise were not microcomputers that infringe my Patent #5,913,685, they could not get around the processors taught in my Patents #4,583,524 and Re.34,800.

16. Three years ago, the developers at Zoll, after a series of patent searches, knew that the *AED Plus* would infringe my Patent and hoped that I would not learn of their transgression and defend my intellectual properties.

17. After not hearing anything from Zoll for a period of over 2 months, I received a telephone call from Gary Freeman who announced that he had recently been hired to manage the intellectual properties of Zoll. He followed this with an e-mail message asking that I visit the Zoll headquarters to discuss, "licensing of your CPR Prompt patents."

18. I replied with a letter to Gary Freeman to set the agenda for the meeting. In this letter I suggested that, "Pages 2,7, 8, and 9 of Patent 5,913,685 teach the automatic recording of rescue data such as date, time, type and duration of each rescue procedure. This is the same information that Zoll's *Rescue Net™* database captures. Claims 20, 36 and 43 of the Patent would furnish both hardware and software-code protection to ZOLL for automatic methods of capturing this database."

19. On August 20, 2003 I met with Gary Freeman at Zoll Headquarters at 269 Mill Road, Chemsford, Massachusetts. During this meeting Gary Freeman told me

that Mr. Packer was not well versed in electronics. Mr. Freeman agreed with my contention to Packer that a computer chip controlled the *AED Plus*. This *AED Plus* microprocessor/computer executed the voice, graphic and written prompts. It also controls the data communications functions using software programmed by Zoll engineers.

20.    My patent attorney Chuck Hieken and Zoll's patent attorney Roger Lee are both partners in the law firm of Fish & Richardson. During this meeting of August 20th Gary Freeman asked me to allow Zoll's Patent Attorney, Roger Lee to review Patent Number 5,913,685 as a consultant to Zoll. He suggested that Attorney Hieken join Attorney Lee to gain a mutual understanding of the Patent's Claims and value to Zoll. I said that I would discuss Freeman's request with Attorney Hieken.

21.    When I told Attorney Hieken about Gary Freeman's request to consult with Attorney Lee, Attorney Hieken declined to participate because he felt that there would be a conflict in interest. He also cautioned me that Richard Packer, the President of Zoll, would probably use Attorney Lee to buttress claims that the *AED Plus* was not infringing on my Patent.

22.    A series of e-mails from Gary Freeman to me produced an Agreement written by Zoll. The Agreement recognized that, "ZOLL and HUTCHINS were interested in exploring the possibility in which ZOLL would acquire rights under one or more patents . . . . HUTCHINS agrees that ZOLL may engage G. Roger Lee and others at Fish & Richardson to undertake an evaluation of the merits of Hutchins' patents."

23.    On September 24, 2003, I received an e-mail from Gary Freeman. The e-mail said in part, "Roger will now be able to begin the analysis, which I would imagine may take as long as a month or so. At that point we can discuss in detail all the patent and business issues. I'll keep you up to date as things proceed with Roger's work. Best Regards, Gary"

24.    I did not hear from Gary Freeman after the month passed. I have not had any communication from Zoll since Freeman's e-mail of September 24, 2003. I have not heard from Zoll's patent attorney Roger Lee.

5

25.    A year has passed since April 16, 2003 when I wrote the letter to Richard Packer to inform Zoll that the *AED Plus* infringed most of the Claims contained in Patent Number 5,913,685.

26.    Now I realize that for the past year Zoll officials had no intention to license my Patent. The drawn-out license discussions were calculated to sap my resolve to challenge the unauthorized use of my intellectual properties. There is no question that Zoll's actions have been very stressful and financially damaging to me.

27.    The 2003 Zoll Annual Report contains a letter to shareholders from Richard A. Packer. This letter states, "ZOLL's performance during fiscal 2003 was outstanding. For the fifth consecutive year, we posted an increase in overall sales of 22.9% (to $184.6 million). Earnings grew to record levels (to 12.9 million). We ended the year with no debt and $60.8 million in cash and short term investments. . . .The strong year included two accomplishments with which we are particularly pleased. In November 2002, the US military awarded an $8.9 million sole source contract . . . The second accomplishment was the sales performance of our new *AED Plus*, which reached $18.8 million across the U.S. and international markets. . .As the only automated external defibrillator on the market that gives rescuers instantaneous CPR feedback, the *AED Plus* stands out from the competition and continues to gain acceptance."

28.    Packer's letter goes on to say, "ZOLL was successful due to strong inroads made with the *AED Plus* and accelerating acceptance of *RescueNet*™ – the only integrated EMS information management system on the market. EMS personnel use this system to archive data captured in the field as a database, allowing them to improve resuscitation efforts."

29.    The 2003 Annual Report makes it clear that *AED Plus* and *RescueNet* are the most promising and lucrative products in the Zoll portfolio. *AED Plus* and *RescueNet* are two products produced by Zoll that infringe on Claims contained in Patent Number 5,913,685.

30.    Zoll is infringing on my Patent #5,913,685 through the manufacture and sale of *AED Plus*.

6

31.    Zoll is infringing on my Patent #5,913,685 and my Copyright filed with the
       Library of Congress by copying my software design for speech and graphic CPR
       prompting for use with *RescueNet™*.


              FURTHER AFFIANT SAYETH NAUGHT

              _____
                  DONALD C. HUTCHINS


Sworn to before me and subscribed in my presence the 21st day of June, 2004

              _____
                  NOTARY PUBLIC