taken by the rescue personnel in resuscitating the victim in response to the information signal input by the rescue personnel."

This CPR computer program is further described in the Specification as it relates to computer networks. One CPR prompting program embedded in the memory of a network server can be used in emergencies as required by rescuers connected in a network to that server. The rescuer interacts with the server CPR program just as if that program was housed in the rescuer's personal computer, laptop or cell phone. The invention would also allow the intervention of medical personnel who were also connected to the server to monitor the rescue and intervene to lend medical assistance and prescribe the use of drug therapy for the victim. This use of this invention as it relates to a computer network is explained on page 3, paragraph 20-25 of the Specification.

> "A further feature of the invention is to use a bridge that links two local area networks together so they can share CPR aiding software. A more sophisticated bridge that could be used is a router or a cross between a bridge and router which is a brouter. All can be used to perform some of the same functions for the CPR network.
> Computers and computer terminals are already in place in locations available to persons trained for CPR rescues. The CPR aiding computer system of the invention can be implemented in many of these systems by simply loading a CPR aiding computer program into a computer memory. CPR prompting is a small adjunct to the principal use of the computer terminal which may be, for example, accounting, engineering, entertainment, or education. Such general purpose computers, when configured according to the invention, can furnish instant access to CPR speech and visual prompting. Computer networks provide a means for distributing access to CPR aiding to remote locations."
> Numerous other features, objects, advantages of the invention will become apparent from the following specification when read in connection with the accompanying drawings in which:
> FIG. 1 is a block diagram of a CPR aiding computer according to the invention;

(line numbers: 20, 25, 30, 35, 40)

16

FIG. 2 is a block diagram of a CPR aiding computer Network according to the invention; 45

FIG. 3 is an initial display screen according to the invention;

FIGS. 4A- 4P are illustrations of output screens displaying graphic CPR prompts; and 50

FIG. 5 is a functional block diagram illustrating synchronization of animated image and intelligible audible prompts in a coordinated format.

The Specification pages that follow can be found in Appendix II. These pages are self explanatory and may be read with the drawings of Patent #5,913,685 for an in depth view of this Patent. FIG. 1 shows what Hutchins referred to as a computer system or general purpose computer at the time of invention. FIG. 1 has a broken line drawn around all the elements to indicate that everything within that line is the computer just as it is titled.

The word computer is defined as a programmable machine that can store, retrieve, and process data. While FIG. 1 shows the mechanical elements within the broken line that store, retrieve, and process data, it does not show one key to Hutchins' invention which is the CPR programming that controls the hardware of the computer and produces the CPR voice and graphic prompting. The 4-bit processor of Hutchins' original invention did not have the capacity to be programmed to produce the objectives discussed in the Specification of Patent No. 5,913,685.

A description of this programming is found starting on page 6, paragraph 35 of the Specification.

### IV. CLAIM SECTION OF PATENT NO. 5,913,685

The 43 Claims included in the Claim Section of Patent No. 5,913,685 describe (or "recite") the structure of the invention in precise and exact terms. Case law offers a variety of approaches to claims analysis such as the following:

Claim construction is a question of law, Markman v. Westview Instruments, Inc. 52F3d 967, 979, 34 USPQ2d 1321, 1329 (Fed. Cir. 1995) (en banc). aff'd, 517 U.S. 370 (1996). Proper claim construction entails an analysis of a patent's intrinsic evidence – the claim language, the written description, and the file history. Vitronics Corp. v. Conceptronic, Inc. 90 F3d 1576, 1582-83, 39 USPQ2d 1573, 1576-77 (Fed. Cir. 1996).

Claim construction begins with the claim language itself. Karlin Tech, Inc. v. Surgical Dynamics, Inc. 177 F.3d 968, 971, 50 USPQ2d 1465, 1467 (Fed. Cir. 1999); Renishaw PLC v. Morposs Cocieta per Azioni, 158 F.3d 1243, 1248, 48 USPQ2d 1117, 1120 (Fed. Cir. 1998). As a starting point, a court assigns a claim term the meaning "that it would be given by persons experienced in the field of invention."

While Hutchins' invention is novel, the claim language generally uses non-technical terms and words typically found in college style dictionaries. The terms the Claims use in describing the rescue procedures for cardiopulmonary resuscitation ("CPR") have changed little in the past 25 years and are used in the basic CPR courses taught in most school systems.

It is acknowledged that the use of dictionaries is considered by some courts to be the first step in any construction analysis. Texas Digital Sys. V. Telegenix, Inc. 308 F.3d 1193, 1203-04 (Fed. Cir. 2002). While it is expected that the reader will have no

problem understanding the meaning of terms contained in the Hutchins' Claims. However to eliminate any misunderstanding, Appendix #I that is attached to this Memorandum lists terms used in the Claims in dictionary form. The meanings in this dictionary appendix are those that were understood by the inventor, Hutchins in 1996, the year in which Patent No. 5,913,685 was filed.

### V.   CLAIMS ANALYSIS OF PATENT NO. 5,913,685

Patent No. 5,913,685 contains five (5) very broad independent Claims and 38 dependent Claims. Each of Hutchins' Claims are stated in one unit, very specific, clear, distinct from other claims and consistent with the narrative description of the patent contained in the patent application and documents created by Hutchins prior to the application date. Each of the 43 claims met the patent office's requirement of being novel and non-obvious at the time of invention.

**Claim 1** is a independent Claim that recites, "**A general purpose computer system adapted for cardiopulmonary resuscitation (CPR) aiding to provide guidance to rescue personnel trained in CPR for resuscitating a victim under an emergency condition, . . .**" This broad claim is augmented and supported by the following 11 dependent Claims as described in depth in the Specification:

```
          What is claimed is:
             1. A general purpose computer system adapted for car-         45
          diopulmonary resuscitation (CPR) aiding to provide guid-
          ance to rescue personnel trained in CPR for resuscitating a
          victim under an emergency condition, comprising:
             a computer terminal, including:
                an output comprising a display and an electroacoustical    50
                   transducer; and
                an input comprising an interactive display input,
                   wherein the interactive display input is adapted for
                   selecting from image or text viewed on the display
                   that is representative at least of characteristics of said   55
                   victim relevant to proper performance of CPR
                   techniques, and producing information signals cor-
```

responding to the characteristics of said victim represented by said image or text selected with said interactive display input;

a processing unit responsive to the information signals and for providing output signals representative of proper steps to be taken in resuscitating said victim; and

wherein the output, in response to said output signals, provides guidance signals, which include audible speech signals produced by the electroacoustical

10

transducer, of the proper steps to be taken by said rescue personnel in resuscitating said victim.

2. The computer system of claim 1, wherein the guidance signals further include visible signals on the display.

3. The computer system of claim 2, wherein said visible signals include a pictorial representation of a rescue personnel practicing said proper steps upon a victim.

4. The computer system of claim 3, wherein the pictorial representation includes an animated sequence of images.

5. The computer system of claim 3, wherein said information signals are further representative of the number of said rescue personnel relevant to proper performance of CPR techniques.

6. The computer system of claim 5, wherein the visible display further provides text signals representative of at least one of said relevant characteristics of said victim and said number of said rescue personnel.

7. The computer system of claim 5, herein said visible display further provides icon representations of at least one of said relevant characteristics of said victim and said number of rescue personnel.

8. The computer system of claim 3, wherein said output signals are further representative of queries regarding at least one of said relevant characteristics of said victim and the number of said rescue personnel relevant to proper performance of CPR techniques.

9. The computer system of claim 3, wherein said input further includes at least one of an alphanumeric keypad for keying the information signals, and a voice recognizer for converting speech information signals into corresponding electrical signals.

10. The computer system of claim 3, wherein said input, said processor unit and said output comprise components of a personal computer.

11. The computer system of claim 10, and further comprising network of personal computers linked to each other and to said first mentioned personal computer.

20

      12. The computer system of claim 3, and further comprising a recorder for providing a record of a sequence of the information signals and the output signals.

**Claim 13 is an independent Claim that recites "A general purpose computer network system adapted to provide guidance to rescue personnel trained in cardiopulmonary resuscitation for resuscitating victims under emergency conditions, comprising:..."** This broad claim is augmented and supported by 7 dependent claims as described in great detail in the Specification:

|  |  |
|---|---|
|       13. A general purpose computer network system adapted to provide guidance to rescue personnel trained in cardiopulmonary resuscitation for resuscitating victims under emergency conditions, comprising: | 40 |
|       a plurality of peripheral units, each including an input for entering information signals representative at least of characteristics of a victim relevant to proper performance of CPR techniques, and an output including a display and an electroacoustical transducer, wherein the input comprises an interactive display input adapted for selecting displayed image or text representative at least of characteristics of said victim relevant to proper performance of CPR techniques, and producing information signals corresponding to the characteristics of said victim represented by said image or text selected with said interactive display input; | 45<br>50<br>55 |
|       a network server, including a router, responsive to said information signals for providing output signals representative of proper steps to be taken in resuscitating said victim; and |  |
|       a communication link for communicating the information signals from the peripheral units to the network server and output signals from the network server to the peripheral units, wherein said output provides guidance signals in response to said output signals, said guidance signals including audible speech signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim. | 60<br>65 |

11

      14. The computer network system of claim 13, wherein said guidance signals further include visible guidance signals on the display representative of the proper steps to be taken by said rescue personnel in resuscitating said victim

21

and synchronized with said audible speech signals.  5
    15. The computer network system of claim **14**, wherein the visible guidance signals include a pictorial representation of rescue personnel practicing said proper steps upon a victim.
    16. The computer network system of claim **15**, wherein the pictorial representation includes an animated sequence of images.  10
    17. The computer network system of claim **14**, wherein said communication link includes at least one of a wireless communication system and a hard-wired communication system.  15
    18. The computer network system of claim **17**, wherein said hard-wired communication system includes a member of the group consisting of a local area network, a PBX network, an interactive CATV network, a telephone network, and the internet.  20
    19. The computer network system of claim **17**, wherein said wireless communication system includes a transmitter and a receiver.
    20. The computer network system of claim **14**, and further including a recorder for providing a record of a sequence of the information signals and the output signals.  25

    **Claim 21** is an independent Claim that recites, "**An article of manufacture, comprising a computer usable medium adapted for use in a general purpose computer having a processor, a display, an interactive display input, and an electroacoustical transducer, the computer usable medium having computer readable program code embodied therein for providing guidance signals to rescue personnel trained in CPR for resuscitation of a victim under an emergency conditions, including:. . .**" This broad Claim is augmented and supported by the following 9 dependent claims as described in depth in the Specification:

    21. An article of manufacture, comprising:
a computer usable medium adapted for use in a general purpose computer having a processor, a display, an interactive display input, and an electroacoustical transducer, the computer usable medium having computer readable program code embodied therein for providing guidance signals to rescue personnel trained in CPR for resuscitation of a victim under an emer-  30

35

22

gency condition, including:
    computer readable program code for causing the general purpose computer to display image or text on the display corresponding at least to characteristics of said victim relevant to proper performance of CPR techniques;     40
    computer readable program code for causing the general purpose computer to produce information signals based upon image or text selected by rescue personnel with said interactive display input     45
wherein said information signals are representative of said characteristics corresponding to said selected image or text;
    computer readable program code for causing the general purpose computer to provide output signals     50
representative of proper steps to be taken in resuscitating said victim in response to said information signals; and
    computer readable program code for causing the general purpose computer to produce audible speech     55
signals representative of proper steps to be taken by said rescue personnel in resuscitating said victim in response to said output signals.

    **22.** The article of manufacture of claim **21**, wherein the computer readable program code in the article of manufacture further includes:     60
    computer readable program code for causing the computer, in response to said output signals, to display visible signals on the display synchronized with the audible speech signals, the visible signals representative of proper steps to be taken by said rescue personnel in resuscitating said victim.     65

**12**

    **23.** The article of manufacture of claim **22**, wherein the visible signals include a pictorial representation of rescue personnel practicing said proper steps upon a victim.
    **24.** The article of manufacture of claim **23**, wherein the computer readable program code in the article of manufacture further includes:     5
    computer readable program code for causing the computer to display an animated sequence of the pictorial representations.
    **25.** The article of manufacture of claim **24**, wherein the computer readable program code in the article of manufacture further includes:     10
    computer readable program code for causing the computer to synchronize the audible speech signals with the animated sequence of pictorial representations.     15
    **26.** The article of manufacture of claim **24**, wherein the

23

```
        visible signals further include icon representations at least of
     characteristics of said victim relevant to proper performance
     of CPR techniques.
             27. The article of manufacture of claim 24, wherein the
     visible signals further include text representations at least of           20
     characteristics of said victim relevant to proper performance
     of CPR techniques.
             28. The article of manufacture of claim 24, wherein the
     computer readable program code in the article of manufac-
     ture further includes:                                                     25
         computer readable program code for causing the com-
             puter to store a record of a sequence of the information
             signals and the output signals.
             29. The article of manufacture of claim 24, wherein said
     information signal is further representative of the number of              30
     said rescue personnel.
             30. The article of manufacture of claim 24, wherein said
     information signal includes a language selection signal and
     the computer readable program code in the article of manu-
     facture further includes computer readable program code for                35
     causing the computer to produce the audible speech signals
     in a spoken language selected from a group of spoken
     languages in response to said language selection signal.
```

**Claim 31** is an independent Claim that recites **"A computer program for providing guidance signals to rescue personnel trained in CPR for resuscitating a victim under an emergency condition, the computer program being stored on a media readable by a general purpose computer, for configuring the computer upon being read and executed by the computer to perform functions comprising:..."** This broad Claim is augmented and supported by the following 7 dependent Claims as described in the Specification:

```
             31. A computer program for providing guidance signals to
     rescue personnel trained in CPR for resuscitating a victim               40
     under an emergency condition, the computer program being
     stored on a media readable by a general purpose computer,
     for configuring the computer upon being read and executed
     by the computer to perform functions comprising:
         displaying image or text on the display corresponding at             45
             least to characteristics of said victim relevant to proper
             performance of CPR techniques;
         producing information signals based upon image or text
             selected by rescue personnel with said interactive dis-
             play input, wherein said information signals are repre-          50
             sentative of said characteristics corresponding to said
```

24

```
                    selected image or text;
          providing output signals representative of proper steps to
                    be taken in resuscitating said victim in response to said
                    information signals; and                                      55
          providing guidance signals representative of proper steps
                    to be taken by said rescue personnel in resuscitating
                    said victim in response to said information signal, said
                    guidance signals comprising audible speech signals.
          32. The computer program of claim 31, wherein said           60
    guidance signals further comprise visible signals on a dis-
    play representative of said proper steps to be taken by said
    rescue personnel in resuscitating said victim in response to
    said information signal.
          33. The computer program of claim 32, wherein said           65
    functions further comprise synchronizing the audible speech
    signals with the visible signals.

                                    13

          34. The computer program of claim 32, wherein the
    visible signals include a pictorial representation of rescue
    personnel practicing said proper steps upon a victim.
          35. The computer program of claim 34, wherein said
    functions further comprise animating said pictorial repre-         5
    sentation.
          36. The computer program of claim 32, wherein said
    functions further comprise causing the computer to store a
    record of a sequence of the information signals and the
    output signals.                                                    10
          37. The computer program of claim 32, wherein the
    information signal is further representative of the number of
    rescue personnel.
          38. the computer program of claim 32, wherein said
    functions further comprise:                                        15
        receiving a language selection signal indicative of a
                    spoken language selected from a plurality of spoken
                    languages; and
        causing the computer to produce the audible speech
                    signals in the selected spoken language in response to  20
                    the language selection signal.
```

**Claim 39** is a independent Claim that recites **"A method for use in cardiopulmonary resuscitation with a general purpose computer system configured for providing guidance to rescue personnel trained in cardiopulmonary resuscitation (CPR) for resuscitating a victim under an emergency condition, . . ."**

25

This broad Claim is augmented and supported by the following 4 dependent Claims as described in depth in the Specification:

> 39. A method for use in cardiopulmonary resuscitation with a general purpose computer system configured for providing guidance to rescue personnel trained in cardiopulmonary resuscitation (CPR) for resuscitating a victim under an emergency condition, the computer system comprising a computer terminal having an input and an output, a processing unit responsive to the input, the output being responsive to the processor and including a display and an electroacoustical transducer, the input including an interacttive display input, the method including:
> displaying image or text on the display corresponding at least to characteristics of said victim relevant to proper performance of CPR techniques:
> producing information signals based upon image or text selected by rescue personnel with said interactive display input, wherein said information signals are repre-

14

> sentative of said characteristics corresponding to said selected image or text;
> processing said information signals, including providing output signals representative of proper steps to be taken in resuscitating said victim;
> converting said output signals into signals corresponding to speech signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim; and
> applying said signals corresponding to speech signals to the electroacoustical transducer to provide audible speech guidance signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim.
> 40. The method of claim 39, wherein said computer terminal further comprises an electroacoustical transducer responsive to said output signals, and wherein said method further comprises converting said output signals to signals corresponding to visible signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim, and applying said signals corresponding to visible signals to said display to provide visible guidance signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim synchronized with said audible speech guidance signals.
> 41. The method of claim 40, wherein said visible guidance

26

signals include an animated sequence of images of a rescue
personnel practicing said proper steps upon a victim.
  42. The method of claim **40**, wherein said input, processor   30
and output of said computer system comprise a personal
computer in a network of computers, including a router,
linked to each other.
  43. The method of claim **40**, wherein said method further
includes storing a record of said information signals on a   35
storage medium.

* * * * *

## VI. THE TECHNOLOGY IN ISSUE FOR PATENT NO. 5,913,685

An article was published in the May 2003 issue of *Product Design and Development*, attached as Exhibit #10, describing the gold award winner. The award was given to a Chicago based design team and Zoll engineers for the *Zoll AED Plus*, an automatic external defibrillator with CPR and resuscitation guidance capabilities. The article goes on to say, "To operate it, the user simply turns on the unit and follows simple voice and graphic prompts to assess the situation and perform CPR or defibrillation."

Zoll has manufactured and marketed automatic defibrillators (AEDs) for many years. After reading this article, Hutchins recognized that the *"Plus"* of *AED Plus* was the addition of a computer generated voice and graphic prompting system for cardiopulmonary resuscitation (CPR) and that the Plus portion of the AED Plus infringed on Hutchins' U.S. Patent Number 5,913,685.

To confirm that Zoll is infringing on Patent No. 5,913,685, Hutchins visited the Zoll corporate web site. This web site offers extensive information on Zoll including Annual Reports, Quarterly Reports, and Form 10-K. Each of these Reports speaks of the successful introduction of the *AED Plus* defibrillator and the huge potential for the future. The web site included an *AED Plus* brochure that Hutchins printed-out that is included herein as Exhibit #8. The brochure offers further evidence that the *AED Plus* infringes on

27

most of the Claims in Patent 5,913,685 through the use of voice and graphic CPR prompting. The AED Plus also infringes on the networking Claims of Patent 5,913,685 as it states, "Event data, including all machine information, associated with ACG, and audio, are downloaded via a standard IRDA port, found on most desktops. Data is available on Zoll Data Review or Zoll Data Control archiving and analysis software for medical control, retrospective analysis and reports."

The Zoll web site is linked to a UCC web site named AED@Home. UCC is the major distributor of *AED Plus* and its web site offers further evidence of Zoll's infringement including the AED@Home step by step demo that Hutchins recorded on a CD is included as Exhibit #11. This video demo when downloaded or printed offers CPR prompts in spoken, graphic and written characters.

The AED@Home web site also offers the AED Plus Administrators Guide and Specifications copied herein as Exhibit 9 It is clearly evident that the audio and graphic CPR prompting described in pages 5-12 of the Guide are identical to FIG. 1 of Patent.No.5.913,685. It is also evident that the Audio Recording Option on page 12 and the Data Communications functions on page 20 of the Guide are described in FIG. 2 of Hutchins' Patent No. 5,913,685.

Concerned with this infringement, on April 16, 2003 Hutchins wrote a letter to Richard Packer, the President of Zoll. Richard Packer telephoned Hutchins on Monday, May 5, 2003. Hutchins explained that if he allowed Zoll to infringe that other defibrillator manufacturers would do the same and cause Hutchins great financial damage in loss of royalties. Mr. Packer indicated that Zoll had reviewed all of my patents dealing with CPR while in the process of developing *AED Plus*. He said that it was the

28

opinion at Zoll that the *AED Plus* would not infringe on Patent Number 5,913,685 because the *AED Plus* used a microprocessor rather than a computer to generate voice and graphic prompting. Hutchins reacted to this explanation by telling Mr. Packer that it was commonly known that a microprocessor is a computer on a chip.

Zoll's 2003 Annual Report claims that, "The AED Plus is the only public access defibrillator available today that coaches rescuers through all steps of the American Heart Association's Chain of Survival." This "Chain of Survival" includes both CPR and AED procedures and certainly the *AED Plus* is a great advancement. While prompting rescuers through the AED procedures may fall under the control of Zoll's patents, prompting rescuers through the CPR procedures falls under the control of Hutchins' Patent No. 5,913,685. When Zoll programmed the computer processor of the *AED Plus* to include CPR voice and graphic prompting, they infringed Hutchins' Patent No. 5,913,685. When Zoll programmed the computer processor to receive and archive rescue data through the standard IRDA network port of the *AED Plus*, they infringed Hutchins' Patent No. 5,913,685.

## Count III

(Patent Infringement by Means of Sales)

Zoll has infringed independent Claim 1 and dependent Claims 2, 3, 4, 6, 8, 12 of Patent No. 5,913,685 through the development and sale of a defibrillator called *AED Plus*. Since its introduction to market in the year 2002, the "*Plus*" to Zoll's automatic defibrillator has been software programming that provides guidance to rescue personnel trained in CPR, comprising an electroacoustical transducer (speaker), processing unit for input signals (keying means), processing unit for output signals (sound and graphics).

29

## Count IV

(Patent Infringement by Means of Manufacture)

Zoll has infringed independent Claim 21 and dependent Claims 22, 23, 24, 25, 26, and 28 of Patent No. 5,913,685 through the manufacture of a defibrillator called *AED Plus*. Since its introduction to market in the year 2002, the *"Plus"* to Zoll's automatic defibrillator has been computer (microprocessor) program code that provides guidance to rescue personnel trained in CPR, comprising an electroacoustical transducer (speaker), processing unit for input signals (icon keying), processing unit for output signals (vocal instructions and acoustical speaker).

## Count V

(Patent Infringement by Means of Computer Program)

Zoll has infringed independent Claim 31 and dependent Claims 32, 33, 34, 35 and 36 of Patent No. 5,913,685 through the addition of computer functions to an automatic defibrillator called *AED Plus*. These functions include information output signals, guidance signals described in Claim 31. Visible signals claimed in Claim 32 that are synchronized with audible signals as Claim 33. Storage of this program, the algorithms, and functions are claimed by Hutchins in Claim 36.

## Count VI

(Patent Infringement by Means of a Computer Network, Output,
Transmission, Record Keeping and Storage)

Zoll has infringed Claims 13, 36 and 43 of Patent No. 5,913,685 by including what Zoll refers to as *Rescue Net*. *Rescue Net* is a feature of the *AED Plus* and Zoll's network servers that automatically record rescue data such as date, time, type and duration of each rescue procedure. This data is placed in memory to be downloaded

30

through a standard IRDA personal computer port and stored in network computers to be archived as medical and insurance records. These functions are claimed in Claims 13, 36 and 43 and easily understood by viewing FIG. 2 of Patent No. 5,913,685.

## VII. CONCLUSION

Plaintiff, Donald C. Hutchins respectfully requests this Court to interpret these Claims of Patent No. 5,913,685 in the manner explained in this Memorandum.

The Plaintiff, DONALD C. HUTCHINS, Pro Se

January 14, 2005

_____
1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 734-2625
(413) 739-4060 (facsimile)

## CERTIFICATE OF SERVICE

I, Richard J. Moriarty, 43 Greenacre Avenue, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by UPS to: John C. Englander, Esq. Goodwin Proctor, LLP, Exchange Place, Boston, MA 02109.

January 14, 2005

_____
Richard J. Moriarty