UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD C. HUTCHINS,

    Plaintiff,

        v.

ZOLL MEDICAL CORPORATION,

    Defendant.

CASE NO. 04-30121-MAP

**DEFENDANT ZOLL MEDICAL CORPORATION'S
CONSTRUCTION OF THE CLAIMS OF U.S. PATENT NO. 5,913,685**

Pursuant to the Scheduling Order entered by the Court on December 16, 2004, defendant Zoll Medical Corporation ("Zoll") hereby submits its construction of the claims of U.S. Patent No. 5,913,685 ("the '685 patent").

The first column of each chart below recites each claim element. The second column provides Zoll's proposed construction of each element and the reasoning behind it, including citations to the portions of the specification and prosecution history that support Zoll's proposed construction and definitions from dictionaries available to persons skilled in the art in 1996 (the year in which the application for the '685 patent was filed). Zoll is not currently relying on any extrinsic evidence to support its proposed claim construction.

Evidence supporting Zoll's claim construction may be found in the accompanying Appendix. Except as noted, where a term is initially defined in Zoll's claim construction charts, it retains that same definition throughout the claim construction charts. Any claim element not specifically construed herein should be given its ordinary dictionary definition.

Plaintiff has not proposed a formal construction of any claim term in the '685 patent. Zoll is therefore unable to determine with specificity which claim terms are or are likely to be at issue. Accordingly, Zoll offers its construction of terms that are likely to be in dispute between the parties.[1] Should plaintiff amend or supplement his claim construction, Zoll reserves the right to supplement its own claim construction to address any material differences between the parties' proposed constructions.

Respectfully submitted,

/s/ Jordan M. Singer
John C. Englander (BBO # 542532)
Jordan M. Singer (BBO #651068)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
Fax: (617) 523-1231

Attorneys for Defendant
Zoll Medical Corporation

Dated: March 2, 2005

---

[1] Plaintiff has also failed to provide any construction of any claim term in U.S. Patent No. Re. 34,800, which he asserts in the alternative against Zoll. *See* Complaint, ¶¶ 40, 43. Accordingly, Zoll has not provided a construction of the asserted claims in that patent. Zoll expressly reserves the right to amend or supplement its claim construction should plaintiff supplement or amend his claim construction to include the claims of the '800 patent.

### A. U.S. Patent No. 5,913,685

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| 1. A **general purpose computer** **system** **adapted** for cardiopulmonary resuscitation (CPR) aiding to provide guidance to **rescue personnel trained in CPR** for resuscitating a victim under an **emergency condition**, **comprising**: | The term "**general purpose computer**" means a computer capable of running multiple unrelated programs, which are selected by the user and loaded into the device. It must feature at least: (1) a central processing unit, (2) one or more input devices that are not specific to any one program, (3) memory, (4) mass storage devices (such as a disk drive) for storing large amounts of data, and (5) one or more output devices. *See* Tab A, col. 3, lines 29-34; col. 3, line 54 – col. 4, line 3; *id.* at Fig. 1; Tab B at 15; Tab C at 52. Plaintiff has expressly distinguished a "general purpose computer" from a dedicated device; that is, a device capable of running only a pre-set program. *See* Tab B at 15-16.<br><br>The term "**general purpose computer system**" means the combination of hardware and software that allow a general purpose computer to accept input, process and store it, and produce output. *See* Tab C at 270.<br><br>The term "**adapted**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "made fit (as for a specific or new use or situation) often by modification." *See* Tab E at 55.<br><br>The term "personnel trained in CPR" means "one or more persons previously trained in CPR techniques." *See* Tab A, col. 6, lines 50-51. The term "**rescue personnel trained in CPR**" means "one or more persons previously and specially trained to perform rescue operations and CPR techniques."<br><br>The term "**emergency condition**" is synonymous with "emergency situation," and means a situation characterized by an |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | unforeseen combination of circumstances or the resulting state that calls for immediate action. *See* Tab A, col. 6, line 48; Tab E at 407. |
| | The term "**comprising**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "made up of." *See* Tab E at 270-71. |
| (a) a computer **terminal**, including: | The term "**terminal**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "an input-output device consisting of a screen and a keyboard for communicating with a computer." *See* Tab D at 370. |
| (1) an **output** comprising a **display** and an **electroacoustical transducer**; and | The term "**output**" means an "output device" or "a machine that enables you to get information out of a computer," such as a printer or video monitor. *See* Tab C at 201; Tab A, col. 5, lines 37-38.<br><br>The term "**display**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was a "display screen" or "the part of the monitor that gives information in visual form." *See* Tab C at 74; Tab E at 365; Tab A, col. 2, line 22.<br><br>The term "**transducer**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a device that is actuated by power from one system and supplies power, usually in another form, to a second system." *See* Tab E at 1252. An "**electroacoustical transducer**" means a transducer that transfers electronic energy into acoustical energy. *See id.* at 401. |
| (2) an **input** comprising an **interactive display input**, | The term "**input**" means an "input device" or "a machine that enables you to put information into a computer for processing." |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | *See* Tab C at 139. *See also* Tab A, col. 1, lines 46-49; col. 5, lines 48-53; Tab B at 13-14, 16.<br><br>The term "**interactive display input**" means "a device for communicating with a computer which allows a user to respond to options presented by the computer by selecting from a menu displayed on a display screen." This construction is based on the ordinary definitions of the component words and plaintiff's use of the term in the specification and prosecution history. *See* Tab C at 74, 139; Tab D at 365. An "interactive system" is "a computer system in which the user communicates with the computer through a keyboard and screen." *See* Tab D at 192-93; *see also* Tab A, col. 7, lines 26-27, 30-32; col. 8, lines 5-6, 10-15. The specification is explicit that the user must communicate with the computer by selecting from options presented on the display. *See* Tab A, col. 2, lines 22-25, col. 7, line 10 – col. 8, line 60; Figs. 4A-4P. |
| (3) **wherein the interactive display input is adapted for selecting from image or text viewed on the display that is representative at least of characteristics of said victim relevant to proper performance of CPR techniques**, | The phrase "**characteristics of said victim relevant to proper performance of CPR techniques**" means the following specific traits or qualities of the victim: (1) whether the victim is an adult, baby, or child; (2) whether the victim requires mouth-to-mouth resuscitation; and (3) whether a choking victim is conscious or unconscious. *See* Tab A, col. 1, lines 39-42, 46-51; col. 2, lines 27-31; col. 6, lines 48-50; col. 7, lines 30-39; col. 8, lines 10-14; *id*., Figs. 3 & 4A-4P; Tab E at 227.<br><br>The phrase "**wherein the interactive display input is adapted for selecting from image or text viewed on the display that is representative at least of characteristics of said victim relevant to proper performance of CPR techniques**" means that the interactive display input (as defined above) is made fit to display at least two of the following options in image or text form for |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | selection by the user: (1) whether the victim is an adult, baby, or child, (2) whether the victim requires mouth-to-mouth resuscitation; and (3) whether a choking victim is conscious or unconscious.  *See* Tab A, col. 7, line 10 – col. 8, line 14. |
| (4) and **producing information signals corresponding** to the characteristics of said victim represented by said image or text selected with said interactive display input; | The term "**producing**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "giving rise to."  *See* Tab E at 938.<br><br>The term "**signal**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a detectable physical quantity or impulse (as a voltage, current, or magnetic field strength) by which messages of information can be transmitted."  *See* Tab E at 1096.  As used in the '685 patent, "**information signals**" means "signals that transmit information selected by the user through the interactive display input."  *See* Tab A, col. 1, lines 46-49; col. 2, lines 5-9; col. 3, lines 3-4, 14-15, 19-20; col. 5, lines 49-50; col. 7, lines 10-13.<br><br>The term "**corresponding**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "having or participating in the same relationship."  *See* Tab E at 293. |
| (b) a **processing unit** responsive to the information signals and for providing **output signals** representative of proper steps to be taken in resuscitating said victim; and | The term "**processing unit**" means a processor or CPU, which was understood by one of ordinary skill in the art at the time of the alleged invention to be "the part of the computer where arithmetic and logical operations are performed and instructions are decoded and executed."  *See* Tab D at 92; Tab A, col. 1, lines 51-54.<br><br>The term "**output signals**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "signals that transmit the |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | information that a computer generates as a result of its calculations." *See* Tab D at 267; Tab A, col. 1, lines 51-54; col. 2, lines 5-9; col. 7, lines 53-54. |
| (c) wherein the output, in response to said output signals, provides **guidance signals**, which include **audible speech signals** produced by the electroacoustical transducer, of the proper steps to be taken by said rescue personnel in resuscitating said victim. | The term "**guidance signals**" means signals that transmit information that guides the user. *See* Tab F at 1009; Tab A, col. 7, lines 47-50.<br><br>The term "**audible**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "heard or capable of being heard." *See* Tab E at 115.<br><br>The term "**speech signals**" means signals that transmit information in the form of a human voice. *See* Tab A, col. 7, lines 50, 66-67. |
| 2. The computer system of claim 1, wherein the guidance signals further include **visible signals** on the display. | This claim references a claim previously set forth, Claim 1, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 1.<br><br>The term "**visible signals**" means "signals that transmit information in a manner that can be seen." *See* Tab E at 1318; Tab A, col. 7, lines 49-50. |
| 3. The computer system of claim 2, wherein said visible signals include a **pictorial representation** of a rescue personnel **practicing** said proper steps upon a victim. | This claim references a claim previously set forth, Claim 2, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 2.<br><br>The term "**pictorial representation**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "an artistic likeness consisting of pictures." *See* Tab E at 890 & 1000.<br><br>The term "**practicing**" should be given its ordinary meaning as |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | understood by one of ordinary skill in the art at the time of the alleged invention, which was "making use of." *See* Tab F at 1780. |
| 4. The computer system of claim 3, wherein the pictorial representation includes an **animated sequence of images**. | This claim references a claim previously set forth, Claim 3, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 3.<br><br>The term "**animated**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "made in the form of an animated cartoon or animation." *See* Tab F at 86.<br><br>The term "**sequence**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a continuous or connected series." *See* Tab E at 1073.<br><br>The term "**image**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a vivid or graphic representation or description." *See* Tab E at 600. |
| 6. The computer system of claim 5, wherein the **visible display** further provides **text signals** representative of at least one of said relevant characteristics of said victim and said number of said rescue personnel. | This claim references a claim previously set forth, Claim 5, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 5.<br><br>Claim 5, which has <u>not</u> been asserted against Zoll, reads "The computer system of claim 3, wherein said information signals are further representative of the number of said rescue personnel relevant to proper performance of CPR techniques." Tab A, col. 10, lines 9-12. Notwithstanding its construction of Claim 6 in light of Claim 5, Zoll does not admit any liability or infringement with respect to Claim 5, and expressly reserves its right to challenge Claim 6 on the ground that Claim 5 has not been asserted. |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
|  | The term "**visible display**" means the portion of the display that transmits visible signals. *See* Tab A, col. 1, lines 54-58; col. 2, lines 9-12.<br><br>The term "**text signals**" means signals that transmit information that may be viewed on a display as text. *See* Tab A, Figs. 3 & 4A-4P. |
| 8. The computer system of claim 3, wherein said output signals are further representative of **queries** regarding at least one of said relevant characteristics of said victim and the number of said rescue personnel relevant to proper performance of CPR techniques. | This claim references a claim previously set forth, Claim 3, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 3.<br><br>The term "**query**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "question" or "inquiry." *See* Tab E at 966. |
| 13. A **general purpose computer network system** adapted to provide guidance to rescue personnel trained in cardiopulmonary resuscitation for resuscitating victims under emergency conditions, comprising: | The term "**network**" means "a set of computers and/or peripheral units connected together so as to permit two-way communication." *See* Tab C at 186-87; Tab D at 252. The specification is clear that the "network" must feature two-way communication between a network server and peripheral units. *See* Tab A, col. 2, lines 5-9, col. 5, lines 48-55. Furthermore, plaintiff explicitly stated during prosecution that "two way communication capability would be required for computer networks." Tab B at 15. A "**general purpose computer network system**" should therefore be construed as a set of general purpose computers (as that term is defined above) linked together so as to permit two-way communication. *See* Tab A, col. 5, lines 48-55. |
| (a) a **plurality** of **peripheral units**, each including an input for entering information signals representative at least of characteristics of a victim relevant to proper performance of CPR | The term "**plurality**" should be given its ordinary meaning as understood at the time of the alleged invention, which was "a large number or quantity." *See* Tab E at 906. |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| techniques, and an output including a display and an electroacoustical transducer, wherein the input comprises an interactive display input adapted for selecting displayed image or text representative at least of characteristics of said victim relevant to proper performance of CPR techniques, and producing information signals corresponding to the characteristics of said victim represented by said image or text selected with said interactive display input; | The term "**peripheral units**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "devices connected to a computer." *See* Tab D at 283; Tab A, col. 1, lines 65-67. |
| (b) a **network server**, including a **router**, responsive to said information signals for providing output signals representative of proper steps to be taken in resuscitating said victim; and | The term "**network server**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a computer that stores files and provides them to individual workstations, or clients." *See* Tab C at 255.<br>The term "**router**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a hardware device that connects two or more networks and routes incoming data packets to the appropriate network." *See* Tab D at 327. |
| (c) a **communication link** for **communicating** the information signals from the peripheral units to the network server and the output signals from the network server to the peripheral units, wherein said output provides guidance signals in response to said output signals, said guidance signals including audible speech signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim. | The term "**communication link**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a connection between computers, devices, programs or files over which data is transmitted." *See* Tab C at 159; Tab A, col. 5, line 61 – col. 6, line 1.<br><br>The term "**communicating**" with respect to information or output signals means sending signals by means of the communication link. *See* Tab A, col. 5, lines 61-63. |
| 21. An **article of manufacture**, comprising: | The term "**article of manufacture**" means an article produced "from raw materials prepared by giving to these materials new forms, qualities, properties, or combinations whether by hand labor or by machinery." *Diamond v. Chakrabarty*, 447 U.S. 303, |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
|  | 308 (1980). |
| (a) a **computer usable medium** adapted for use in a general purpose computer having a processor, a display, an interactive display input, and an electroacoustical transducer, the computer usable medium having **computer readable program code embodied** therein for providing guidance signals to rescue personnel trained in CPR for resuscitation of a victim under an emergency condition, including: | The term "**medium**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "material used for the storage of information," such as magnetic disks, tapes, and optical disks. *See* Tab D at 230. A "**computer usable medium**" is such a medium suitable for use by or with a computer. *See* Tab A, col. 4, line 64 – col. 5, line 2.<br><br>The phrase "having a processor, a display, an interactive display input, and an electroacoustical transducer" refers to the "general purpose computer," not the "computer usable medium."<br><br>The term "**code**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "the instructions in a computer program." *See* Tab C at 47. The term "**computer readable program code**" means code for a computer program that may be read by a computer (as the term "read" is defined in Claim 31 below). *See* Tab A, col. 2, lines 6 – col. 3, line 4.<br><br>The term "**embody**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "cause to become a body or part of a body: INCORPORATE." *See* Tab E at 406. |
| (b) computer readable program code for **causing** the general purpose computer **to display** image or text on the display corresponding at least to characteristics of said victim relevant to proper performance of CPR techniques; | The term "**causing**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "to serve as the cause of." *See* Tab E at 217.<br><br>The term "**to display**" should be given its ordinary meaning as |

LIBA/1456122.1

9

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
|  | understood by one of ordinary skill in the art at the time of the alleged invention, which was "to set forth (as in representation or narrative): DESCRIBE; DEPICT. *See* Tab F at 654. |
| (c) computer readable program code for causing the general purpose computer **to produce** information signals based upon image or text selected by rescue personnel with said interactive display input, wherein said information signals are representative of said characteristics corresponding to said selected image or text; | The term "**to produce**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "to give rise to." *See* Tab E at 938. |
| (d) computer readable program code for causing the general purpose computer to provide output signals representative of proper steps to be taken in resuscitating said victim in response to said information signals; and |  |
| (e) computer readable program code for causing the general purpose computer to produce audible speech signals representative of proper steps to be taken by said rescue personnel in resuscitating said victim in response to said output signals. |  |
| 22. The article of manufacture of claim 21, wherein the computer readable program code in the article of manufacture further includes: | This claim references a claim previously set forth, Claim 21, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 21. |
| (a) computer readable program code for causing the computer, in response to said output signals, to display visible signals on the display **synchronized** with the audible speech signals, the visible signals representative of proper steps to be taken by said rescue personnel in resuscitating said victim. | The term "**synchronized**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "happening at the same time." *See* Tab E at 1197. |
| 23. The article of manufacture of claim 22, wherein the visible signals include a pictorial representation of rescue personnel practicing said proper steps upon a victim. | This claim references a claim previously set forth, Claim 22, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 22. |
| 24. The article of manufacture of claim 23, wherein the computer readable program code in the article of manufacture further includes: computer readable program code for causing to | This claim references a claim previously set forth, Claim 23, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 23. |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| computer to display an animated sequence of the pictorial representations. | |
| 25.  The article of manufacture of claim 24, wherein the computer readable program code in the article of manufacture further includes: computer readable program code for causing the computer to synchronize the audible speech signals with the animated sequence of pictorial representations. | This claim references a claim previously set forth, Claim 24, and is therefore a dependent claim.  As such, it incorporates by reference all the limitations of Claim 24. |
| 26.  The article of manufacture of claim 24, wherein the visible signals further include **icon representations** at least of characteristics of said victim relevant to proper performance of CPR techniques. | This claim references a claim previously set forth, Claim 24, and is therefore a dependent claim.  As such, it incorporates by reference all the limitations of Claim 24.<br><br>The term "**icon representation**" should be construed in the same manner as "pictorial representation" in Claim 3 above.  *See* Tab E at 596. |
| 28.  The article of manufacture of claim 24, wherein the computer readable program code in the article of manufacture further includes: computer readable program code for causing the computer **to store** a **record** of a sequence of the information signals and the output signals. | This claim references a claim previously set forth, Claim 24, and is therefore a dependent claim.  As such, it incorporates by reference all the limitations of Claim 24.<br><br>The term "**to store**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "to transmit a data item from the computer to a memory device."  *See* Tab D at 358.<br><br>The term "**record**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a collection of related data items."  *See* Tab D at 315. |
| 31.  A computer **program** for providing guidance signals to rescue personnel trained in CPR for resuscitating a victim under an emergency condition, the computer program being stored on a media readable by a general purpose computer, for **configuring** the computer upon being **read** and **executed** by the computer to | The term "**program**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "a set of instructions for a computer to execute."  *See* Tab D at 299. |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| perform functions comprising: | The term "**configuring**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "setting up a computer or program to be used in a particular way." *See* Tab D at 87.<br><br>The term "**read**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "transferred from an external medium, such as a diskette, into a computer." *See* Tab D at 314.<br><br>The term "**executed**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention. A program that is "executed" is run by the computer. *See* Tab C at 94. |
| (a) displaying image or text on the display corresponding at least to characteristics of said victim relevant to proper performance of CPR techniques; | |
| (b) producing information signals based upon image or text selected by rescue personnel with **said interactive display input**, wherein said information signals are representative of said characteristics corresponding to said selected image or text; | The term "interactive display input" in this claim has no antecedent structure. To the extent this claim element must be construed, "interactive display input" should be construed in the same manner as set forth in Claim 1 above. Zoll expressly reserves its right to challenge the validity of Claim 31 at a later time. |
| (c) providing output signals representative of proper steps to be taken in resuscitating said victim in response to said information signals; and | |
| (d) providing guidance signals representative of proper steps to be taken by said rescue personnel in resuscitating said victim in response to said information signal, said guidance signals comprising audible speech signals. | |
| 32. The computer program of claim 31, wherein said guidance signals further comprise visible signals on a display | This claim references a claim previously set forth, Claim 31, and is therefore a dependent claim. As such, it incorporates by |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| representative of proper steps to be taken by said rescue personnel in resuscitating said victim in response to said information signal. | reference all the limitations of Claim 31. |
| 33. The computer program of claim 32, wherein said functions further comprise synchronizing the audible speech signals with the visible signals. | This claim references a claim previously set forth, Claim 32, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 32. |
| 34. The computer program of claim 32, wherein the visible signals include a pictorial representation of rescue personnel practicing said proper steps upon a victim. | This claim references a claim previously set forth, Claim 32, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 32. |
| 35. The computer program of claim 34, wherein said functions further comprise animating said pictorial representation. | This claim references a claim previously set forth, Claim 34, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 34. |
| 36. The computer program of claim 32, wherein said functions further comprise causing the computer to store a record of a sequence of the information signals and the output signals. | This claim references a claim previously set forth, Claim 32, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 32. |
| 43. The method of claim 40, wherein said method further includes storing a record of said information signals on a **storage medium**. | This claim references a claim previously set forth, Claim 40, and is therefore a dependent claim. As such, it incorporates by reference all the limitations of Claim 40. Claim 40 itself is a dependent claim, incorporating by reference all the limitations of Claim 39. Plaintiff does not assert Claims 39 or 40 against Zoll, but both claims must be addressed here in order to properly construe Claim 43.<br><br>Claim 39 reads: A method for use in cardiopulmonary resuscitation with a general purpose computer system configured for providing guidance to rescue personnel trained in cardiopulmonary resuscitation (CPR) for resuscitating a victim under an emergency condition, the computer system comprising a terminal having an input and an output, a processing unit responsive to the input, the output being responsive to the processor and including a display and an electroacoustical transducer, the input including an interactive display input, the |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | method including:<br>    displaying image or text on the display corresponding at least to characteristics of said victim relevant to proper performance of CPR techniques;<br>    producing information signals based upon image or text selected by rescue personnel with said interactive display input, wherein said information signals are representative of said characteristics corresponding to said selected image or text;<br>    processing said information signals, including providing output signals representative of proper steps to be taken in resuscitating said victim;<br>    converting said output signals into signals corresponding to speech signals representative of proper steps to be taken by said rescue personnel in resuscitating said victim; and<br>    applying said signals corresponding to speech signals to the electroacoustical transducer to provide audible speech guidance signals representative of the proper steps to be taken by rescue personnel in resuscitating said victim.<br><br>Claim 40 reads: The method of claim 39, wherein said computer terminal further comprises an electroacoustical transducer responsive to said output signals, and wherein said method further comprises converting said output signals to signals corresponding to visible signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim, and applying said signals corresponding to visible signals to said display to provide visible guidance signals representative of the proper steps to be taken by said rescue personnel in resuscitating said victim synchronized with said audible speech signals.<br><br>Notwithstanding its construction of Claim 43 in light of Claims 39 |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | and 40, Zoll does not admit any liability or infringement with respect to Claims 39 or 40, and expressly reserves its right to challenge Claim 43 on the ground that Claims 39 and 40 have not been asserted. |
| | The term "**storage medium**" means "storage device," which is "any device used to record and store computer data," including hard disks, floppy disks, and tape. *See* Tab C at 267. |