UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD C. HUTCHINS,

    Plaintiff,

        v.

ZOLL MEDICAL CORPORATION,

    Defendant.

CASE NO. 04-30121-MAP

**DEFENDANT ZOLL MEDICAL CORPORATION'S
CONSTRUCTION OF THE CLAIMS OF U.S. PATENT NO. Re. 34,800**

Defendant Zoll Medical Corporation ("Zoll") hereby submits its construction of Claim 1 of U.S. Patent No. Re. 34,800 (the " '800 patent").

The first column on each chart below recites each claim element. The second column provides Zoll's proposed construction of each element and the reasoning behind it, including citations to the portions of the specification and prosecution history that support Zoll's proposed construction and definitions from dictionaries available to persons skilled in the art in 1986 (the year in which the application for the '800 patent was filed). Zoll is not currently relying on any extrinsic evidence to support its proposed claim construction.

Evidence supporting Zoll's claim construction may be found in the accompanying Appendix. Except as noted, where a term is initially defined in Zoll's claim construction charts, it retains that same definition throughout the claim construction charts. Any claim element not specifically construed herein should be given its ordinary dictionary definition.

Plaintiff has not proposed a formal construction of any claim term of the '800 patent. Zoll is therefore unable to determine with specificity which claim terms are or are likely to be at

issue. Accordingly, Zoll limits its construction at this stage to Claim 1 of the '800 patent, which Zoll believes to contain the terms and claims that are likely to be in dispute between the parties. Should plaintiff amend or supplement his claim construction, Zoll reserves the right to supplement its own claim construction to address any material differences between the parties' proposed constructions.

        Respectfully submitted,

        /s/ Jordan M. Singer
        John C. Englander (BBO # 542532)
        Jordan M. Singer (BBO #651068)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109
        (617) 570-1000
        Fax: (617) 523-1231

        Attorneys for Defendant
        Zoll Medical Corporation

Dated: June 29, 2005

LIBA/1534767.1

A.  U.S. Patent No. Re. 34,800

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| 1. **Cardiopulmonary resuscitation prompting apparatus** for providing **audible verbal guidance** to **rescue personnel trained in CPR** under **emergency conditions** for aiding a **victim requiring CPR techniques** comprising: | The term "**apparatus**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "an instrument or appliance designed for a specific operation." Tab B at 54.  The term "**prompt**" should also be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "to assist (one acting or reciting) by suggesting or saying the next words of something forgotten or imperfectly learned." *Id*. at 914.  A "**cardiopulmonary resuscitation prompting apparatus**" means an instrument or appliance designed specifically to assist the user through the steps of cardiopulmonary resuscitation (CPR) by suggesting or saying each successive step of CPR. *See* Tab A, col. 7, lines 22-30.<br><br>The terms "audible," "verbal" and "guidance" should be given their ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention.  The meaning of "audible" was "heard or capable of being heard."  Tab B at 73.  The meaning of "verbal" was "spoken rather than written." *Id*. at 1289.  The meaning of "guidance" was "the superintendence or assistance rendered by a guide."  Tab C at 1009.  The collective term "**audible verbal guidance**" means "assistance presented as spoken words that can be heard by the user."<br><br>The term "**rescue personnel trained in CPR**" means "one or more persons previously and specially trained to perform rescue operations and CPR techniques." *See* Tab A, col. 1, lines 26-27; col. 2, lines 17-24; col. 3, lines 20-22.<br><br>The term "**emergency conditions**" is synonymous with "emergency situations," and means situations characterized by an unforeseen combination of circumstances or the resulting state that calls for |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | immediate action. *See* Tab B at 368. The term "under emergency conditions" means that the cardiopulmonary resuscitation prompting apparatus provides audible verbal guidance at the moment of the emergency. *See* Tab A, col. 2, line 47 – col. 3, line 22.<br><br>The phrase "**victim requiring CPR techniques**" means a person who has experienced cardiac arrest and upon whom performance of accepted CPR techniques is necessary. *See* Tab A, col. 1, lines 23-26; col. 3, lines 14-18. |
| (a) **keying means** for entering **information signals** representative at least of **characteristics of said victim and the number of said rescue personnel relevant to proper performance of cardiopulmonary resuscitation techniques**, | Since this element includes the word "means" it is presumed to invoke 35 U.S.C. § 112, ¶ 6. Indeed, the phrase "**keying means**" describes no definite structure, and therefore should be construed as a means-plus-function claim element. The recited function is entering information signals representative at least of: (1) characteristics of a victim relevant to proper performance of CPR techniques; and (2) the number of rescue personnel relevant to proper performance of CPR techniques.<br><br>The means disclosed is a "keying means." The term "**keying**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "capturing or setting (as data or text) by means of a keyboard." Tab B at 627.<br><br>The term "**signal**" should be given its ordinary meaning as understood by one of ordinary skill at the time of the alleged invention, which was "a detectable physical quantity or impulse (as a voltage, current, or magnetic field strength) by which messages of information can be transmitted." Tab B at 1071. As used in the '800 patent, "**information signals**" means signals that transmit information entered by the user through the keying means. *See* Tab A, Abstract.<br><br>The phrase "**characteristics of said victim … relevant to proper performance of cardiopulmonary resuscitation techniques**" means the |

2

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | following specific traits or qualities of the victim: (1) whether the victim is an adult, baby or child; (2) whether the victim requires mouth-to-mouth resuscitation; and (3) whether a choking victim is conscious or unconscious. *See* Tab A, col. 6, lines 31-40; col. 6, line 56 – col. 7, line 1; Fig. 5.<br><br>The phrase "**representative … of… the number of rescue personnel relevant to proper performance of cardiopulmonary resuscitation techniques**" means whether one or two rescuers previously and specially trained to perform rescue operations and CPR techniques is available to treat the victim. *See* Tab A, col. 2, lines 17-24; col. 3, lines 20-22; col. 6, lines 35-36.<br><br>The structure disclosed in the '800 patent specification that corresponds to the recited function is a keyboard or keypad. *See* Tab A, Abstract; col. 6, lines 23-42; col. 6, line 53 – col. 7, line 6 & Figs. 5-7. |
| (b) means responsive to the keyed information signals for providing **output signals** representative of **proper steps to be taken in resuscitating said victim**, | Since this element includes the word "means" it is presumed to invoke 35 U.S.C. § 112, ¶ 6. The recited function is "providing output signals representative of proper steps to be taken in resuscitating said victim."<br><br>The structure disclosed in the '800 patent specification that corresponds to the recited function is a microcomputer. *See* Tab A, Abstract; col. 5, lines 27-30 & Fig. 2.<br><br>The term "**output signals**" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was signals that transmit information fed out by a computer. Tab B at 809.<br><br>The term "**proper steps to be taken in resuscitating said victim**" means the steps to be taken to resuscitate a victim that specifically correspond to the "characteristics of said victim and number of said rescue personnel |

| Claim element | Zoll's proposed construction and reasoning |
|---|---|
| | relevant to proper performance of cardiopulmonary resuscitation techniques," as those terms are defined above. *See* Tab A, col. 7, lines 18-24. |
| (c) and **electroacoustical transducing means** responsive to said output signals for providing **audible intelligible sound signals** representative of the proper resuscitation steps to be taken by said rescue personnel in resuscitating said victim. | Since this element includes the word "means" it is presumed to invoke 35 U.S.C. § 112, ¶ 6. The recited function is "providing audible intelligible sound signals representative of the proper resuscitation steps to be taken by said rescue personnel in resuscitating said victim.<br><br>The means must be an "**electroacoustical transducing means**." The term "transduce" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the invention, which was "to convert (as energy or a message) into another form." Tab B at 1231. An "electroacoustical transducing means" is a means by which electronic energy is converted into acoustical energy.<br><br>The term "intelligible" should be given its ordinary meaning as understood by one of ordinary skill in the art at the time of the alleged invention, which was "capable of being understood or comprehended." Tab B at 595. The term "**audible intelligible sound signals**" means signals transmitting sound messages that can be both heard and understood.<br><br>The structure disclosed in the '800 patent specification that corresponds to the recited function is an electronic voice synthesizer, speech chip, amplifier, and speaker. *See* Tab A, col. 4, lines 6-8; col. 5, lines 31-34, 38-43. |

LIBA/1521448.3

4