# EXHIBIT D

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br>)<br>   Plaintiff )<br>)<br>v. )<br>)<br>ZOLL MEDICAL CORPORATION )<br>)<br>   Defendant )<br>) | **AFFIDAVIT OF**<br>**DONALD C. HUTCHINS** |

NOW COMES DONALD C. HUTCHINS and upon being duly sworn, states that:

1. I am over 18 years of age and have personal knowledge of the matters attested to herein.

2. On February 28, 2005, Attorney Jordan M Singer sent a letter to me that stated, "We are in receipt of a document entitled "United States Patent No. 5,913,685 – Plaintiff's Claim Construction Memorandum." To date, we have not received from you any proposed claim construction for U.S. Patent No. Re 34,800.

3. Attorney Singer concluded by writing, "We understand your claim construction memorandum to mean that only the '685 patent is currently being asserted against Zoll. If this understanding is incorrect, please advise us as to when you will be providing a proposed claim construction for the '800 patent."

4. On March 2, 2005, Attorney Singer provided me with a copy of *Zoll Medical Corporation's claim construction and appendix for United States Patent No. 5,913,685* which was filed with the Court the same day.

5. Paragraph 14, of the Complaint that frames this infringement action discusses a phone conversation between Donald C. Hutchins, the Plaintiff and Richard Packer, the President of Zoll that took place May 5, 2003. Paragraph 14, states,

> "Hutchins explained that if he allowed Zoll to infringe that other defibrillator manufacturers would do the same and cause Hutchins great financial damage in loss of royalties. The conversation was very congenial and Mr. Packer indicated a desire to talk further about licensing Hutchins' Patent. He did indicate that Zoll had reviewed all of Hutchins' patents dealing with CPR while in the process of developing *AED Plus*. He said that it was the opinion at Zoll that the *AED Plus* would not infringe on Patent Number 5,913,685 because the *AED Plus* used a microprocessor rather than a computer to generate voice and graphic prompting. Hutchins reacted to this explanation by telling Mr. Packer that it was commonly known that a microprocessor is a computer on a chip."

6. I can agree with the definitions held by Zoll in Zoll's claim construction and appendix filed with the court on March 2, 2005. I believe that Zoll's claim construction and definitions support my Complaint of patent infringement U.S. Patent No. 5,913,685 as it relate to Zoll's manufacture and sale of the *AED Plus* defibrillator and *RescueNet* software.

7. Zoll's claim construction defines the term general purpose computer as a "computer capable of running multiple unrelated programs, which are selected by the user and loaded into the device." The *AED Plus* processor is a computer that runs unrelated programs such as the program that senses the lack of pulse, the program that calls for the spoken words, the program that retrieves and stores rescue data and the multiple programs that energize and defibrillate. These are all unrelated programs that may or may not be called into use by the *AED Plus* depending upon the condition of the victim.

8. Zoll's claim construction also states that a general purpose computer, "must feature at least (1) a central processing unit, (2) one or more input devices, (3) memory, (4) mass storage devices, (5) one or more output devices." The AED Plus has a central processing unit (CPU); keys, buttons, adhesive sensing pads, ports, etc., for input; computer memory with logic for defibrillation, speech, graphics and instructions for rescuers; mass storage to hold rescue data for *RescueNet* data base archives; an IRDA port, speaker, graphic display, etc. for

output. In simple terms, the AED Plus has all the features defined by Zoll's claim construction definition as "must features" of a general purpose computer.

9. Zoll's claim construction defines a general purpose computer network system as, "a set of computers and/or peripheral units connected together to permit two-way communication." Again, I agree with Zoll's definition. It should be noted that the *AED Plus* uses an IRDA port and Zoll's *RescueNet* software to communicate rescue data to a data bases stored on network servers. The IRDA port is a two-way port that only functions when the server communicates to the AED Plus computer chip. After recognition, the AED Plus sends the data that has been stored in RAM as instructed by the AED Plus computer's central processing unit (CPU).

10. The Zoll claim construction for Hutchins Patent No. 5,913, 685 as presented to me and the Court by Attorney Singer on March 2, 2005 contains no information on which Zoll can support a defense against the allegations presented in my Complaint.

11. Zoll is infringing on my Patent #5,913,685 through the manufacture and sale of *AED Plus*.

12. Zoll is infringing on my Patent #5,913,685 and my Copyright filed with the Library of Congress by copying my software design for speech and graphic CPR prompting for use with *RescueNet*™.

FURTHER AFFIANT SAYETH NAUGHT.

_____
DONALD C. HUTCHINS

Sworn to before me and subscribed in my presence the 25th day of March, 2005

_____
NOTARY PUBLIC

3