UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD C. HUTCHINS,

     Plaintiff,

          v.

ZOLL MEDICAL CORPORATION,

     Defendant.

CASE NO. 04-30121-MAP

**DEFENDANT ZOLL MEDICAL CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Zoll's motion for summary judgment presented straightforward and properly supported
arguments demonstrating why each of plaintiff's claims fail under the applicable law and the
undisputed facts. Plaintiff's Opposition and accompanying "Memorandum of Law
Controverting Defendant Zoll Medical Corporation's Local Rule 56.1 Statement of Undisputed
Facts" ("Rule 56.1 Memorandum") fail to blunt Zoll's points. There can be no genuine dispute
that: (1) as to plaintiff's patent claim, plaintiff agreed to Zoll's claim construction in its entirety,
and plaintiff has not identified any Zoll product that satisfies any claim of the patent as the
parties agree those claims should be construed; (2) as to the copyright claim, plaintiff has not
identified a single word, phrase or element of his copyrighted works that was allegedly copied by
Zoll; and (3) as to the breach of contract claim, the parties' Consent Agreement was limited to a
review of plaintiff's patents by Zoll's outside counsel and did not compel either party to enter
into – or even negotiate – a license agreement. Accordingly, Zoll is entitled to summary
judgment.

## ARGUMENT

**I.    THE AED PLUS DOES NOT INFRINGE ANY CLAIM OF THE '685 PATENT AS THE PARTIES AGREE THOSE CLAIMS SHOULD BE CONSTRUED.**

The parties have already agreed to the proper construction of the salient claims of U.S. Patent No. 5,913,685 ("the '685 patent").[1]  On March 2, 2005, Zoll submitted its claim construction for that patent.  On March 25, 2005, plaintiff submitted a sworn affidavit to the Court which stated, "***I can agree with the definitions held by Zoll in Zoll's claim construction*** and appendix filed with the [C]ourt on March 2, 2005."  *See* Exhibit D to Declaration of Jordan M. Singer in Support of Zoll's Motion for Summary Judgment ("Singer Decl."), ¶ 6 (emphasis added).  The parties' agreed-upon claim construction therefore governs the determination as to whether any infringement has occurred.  *See Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Solaia Tech. LLC v. Arvinmeritor, Inc.*, 361 F. Supp.2d 797, 816-17 (N.D. Ill. 2005) ("when a claim construction is agreed to by the parties, a court may decline to raise the issue *sua sponte*").  As set forth below, Zoll's AED Plus does not infringe any claim of the '685 patent because it does not utilize either an "interactive display input" or a "general purpose computer" as those claim terms have been construed by the parties.  *See, e.g., Lantech, Inc. v. Keip Mach. Co.,* 32 F.3d 542, 547 (Fed. Cir. 1994) (if any claim limitation is missing from the accused device, there can be no literal infringement as a matter of law).

**A.    The AED Plus Does Not Have An "Interactive Display Input."**

*1.    An "interactive display input" must be interactive.*

Every claim of the '685 patent requires an "interactive display input."  The parties agree that the claim term "interactive display input" means "a device for communicating with a

---

[1] Plaintiff has now made clear that he is not asserting U.S. Patent No. Re. 34,800 ("the '800 patent") against Zoll.

computer which allows a user to *respond to options presented by the computer by selecting from a menu* displayed on a display screen." Zoll's Claim Construction at 3 (emphasis added). In other words, the definition of "interactive display input" requires that: (1) the computer present a menu of options on a display screen, and (2) the user ***interact with the computer*** by selecting from among the options displayed and affirmatively entering that selection into the computer. *See* Exhibit A to Declaration of Gary A. Freeman in Support of Zoll's Motion for Summary Judgment ("Freeman Decl."), col. 9, ll. 53-60; *see also id.*, col. 7, ll. 30-46 (rescuer enters information into computer by touching appropriate portions of a selection keypad). It is not enough for the computer merely to issue a command to the user. Rather, the computer must provide choices to the user in the form of a displayed menu, and the user must "interact" – tell the computer her choice by selecting from among the options presented and inputting her selection. *See id.*

The express purpose of the "interactive display input," as required by the patent claims themselves, is to permit the user to "select[] from image or text viewed on the display that is representative at least of characteristics of said victim relevant to proper performance of CPR techniques." Freeman Decl., Ex. A, col. 9, ll. 53-57; *see also id.* col. 10, ll. 49-52; col. 11, ll. 42-48; col. 12, ll. 48-52; col. 13, line 36 – col. 14, line 2. The parties agree that "characteristics of said victim relevant to proper performance of CPR techniques" as used in the '685 patent means: (1) whether the victim is an adult, baby or child, (2) whether the victim requires mouth-to-mouth resuscitation, and (3) whether a choking victim is conscious or unconscious. Zoll's Claim Construction at 3. Accordingly, the "interactive display input" in the '685 patent requires not only that the user interact with the computer by inputting a selection from a menu presented on the computer display, but also that the displayed menu present specific options relating to the

3

victim's stage of development, need for mouth-to-mouth resuscitation, and consciousness.

Freeman Decl., Ex. A, col. 9, ll. 53-57; col. 10, ll. 49-52; col. 11, ll. 42-48; col. 12, ll. 48-52; col.

13, line 36 – col. 14, line 2; *see also* Zoll's Claim Construction at 3.

> 2. *The AED Plus does not meet the parties' agreed-upon definition of "interactive display input."*

Plaintiff has not identified any component or feature of the AED Plus that satisfies the

agreed-upon definition of "interactive display input," and indeed there is none to be found. It is

undisputed that the AED Plus does not require, or even permit, the user to enter *any* information

on the victim's stage of development, need for mouth-to-mouth resuscitation, or degree of

consciousness. Indeed, at no point does the AED Plus require the user to enter information about

the victim. Freeman Decl., ¶ 10. In addition, the AED Plus does not display a menu of options

from which the user may select, and certainly does not display a menu of options pertaining to

the three specific characteristics described above. *Id*. ¶ 9. Simply put, the AED Plus *tells* the

user what to do in an emergency; it does not *ask* the user for victim-specific information, and the

user does not make choices. *See id*. ¶ 5.

Plaintiff confuses the issue when he argues that the ability of the AED Plus to monitor a

victim's heart rhythm and tell the rescuer whether to begin CPR is "undeniable proof that the

AED Plus does sense, react to and display characteristics of the victim relevant to proper

performance of CPR techniques." Plaintiff's Rule 56.1 Memorandum at 4, ¶ 13. First of all,

these functions do not describe an "***interactive display*** input" at all; instead, they describe an

operation by the AED Plus in which the machine itself "senses" the victim's heart's rhythm.

Plaintiff has not identified any way in which input of the victim's heart rhythm into the AED

Plus is "interactive." Furthermore, the victim's heart rhythm is not one of the three specific

characteristics of the victim described in the patent, which the parties agree are the only

characteristics of the victim required by the claims.  Zoll's Claim Construction at 3-4.[2]

> 3.    *Plaintiff's attempted reinterpretation of "interactive display input" is inconsistent with the language of the patent.*

Notably, after agreeing to Zoll's claim construction months ago, plaintiff, in his Rule

56.1 Memorandum, appears to try to reinterpret the meaning of "interactive display input."  This

effort must fail, not only because plaintiff already agreed to the parties' claim construction

without qualification, but also because his proposed reinterpretation is utterly inconsistent with

the specification and claim language of the patent.  For example, plaintiff asserts that the term

"interactive display" "could be as simple as a light going on and a rescuer reacting to that light

by hitting a key to select a procedure."  Plaintiff's Rule 56.1 Memorandum at 4, ¶ 12.  This

understanding is irreconcilable with the plain language of the patent claims, which require (1) the

"interactive display input" to display ***image or text "representative at least of characteristics of***

***said victim relevant to proper performance of CPR techniques"*** – *i.e*., the three specific

categories (stage of development, mouth-to-mouth, and choking) described above – and (2) the

user to input his selection into the computer from among the options presented.  *E.g*., Freeman

Decl., Ex. A, col. 9, ll. 52-60 (emphasis added).  This Court should not give credence to an

alternative interpretation of the claims that is not rooted in the language or prosecution history of

the patent.  *See Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1443 (Fed. Cir.

1997) (proper construction of claims is based first on the claim language, the specification, and

the prosecution history).

---

[2] Plaintiff also states that the "AED Plus uses audible instructions to instruct the rescuer to press the keys/buttons to activate the CPR rescue functions such as the metronome function."  Plaintiff's Rule 56.1 Memorandum at 2, ¶ 3.  This statement is made in plaintiff's unsworn Rule 56.1 Memorandum, and it is simply wrong – there are no "keys/buttons to activate the CPR rescue functions" on the AED Plus.  *See* Freeman Decl., ¶ 10.  Such unsworn statements by plaintiff do not and should not suffice to generate an issue of material fact.

**B.      The AED Plus Does Not Feature a "General Purpose Computer."**

Every claim of the '685 patent also requires a "general purpose computer."  The parties

agree that the term "general purpose computer" should be construed as:

> a computer capable of running multiple unrelated programs, which are selected by
> the user and loaded into the device.  It must feature at least: (1) a central
> processing unit, (2) one or more input devices that are not specific to any one
> program, (3) memory, (4) mass storage devices (such as a disk drive) for storing
> large amounts of data, and (5) one or more output devices.

Zoll's Claim Construction at 1 (emphasis added).

Plaintiff does not contest this previously agreed-upon construction, but instead claims

that it is met by various aspects of Zoll's products, including at least: (1) the AED Plus as a

whole, (2) the Hitachi Super H microprocessor, and (3) a separate computer running RescueNet

software.  However, none of these three permutations suggested by plaintiff satisfies the agreed-

upon definition of "general purpose computer."  *See id.*

Zoll has already explained in detail why the AED Plus does not constitute a "general

purpose computer" in its Memorandum in Support of its Motion for Summary Judgment.  As

indicated there, the AED Plus cannot meet the agreed-upon construction because, among other

things, it: (1) lacks a mass storage device for storing large amounts of data (a fact plaintiff does

not contest); (2) is not capable of running multiple unrelated programs, and instead runs only a

single fixed, factory-programmed rescue sequence; and (3) does not allow the user to select a

program and load it into the device.  Freeman Decl., ¶ 8.

Plaintiff's unsworn contentions about the AED Plus's microprocessor simply do not meet

these fundamental points.  The Super H microprocessor has extremely limited memory and lacks

any mass storage device for storing large amounts of data.  *See* Freeman Decl., ¶ 8.  Similarly,

the microprocessor cannot run multiple unrelated programs which are selected by the user and

loaded into the device.  Rather, the microprocessor runs a single program – the AED Plus rescue sequence – which is programmed into the microprocessor at the factory and cannot be changed by the AED Plus user.  *Id.* ¶¶ 5, 8.  Once again, plaintiff's unsworn (and unsupported) contention to the contrary is simply wrong.[3]

Finally, plaintiff cannot meet the mass storage requirement by arguing that the AED Plus is sometimes connected to *an entirely different computer* running RescueNet software.  Such a connection does not change the AED Plus's microprocessor into a "general purpose computer." Moreover, even taken on its face, plaintiff's proposed combination still fails to satisfy the claims of the '685 patent.  The claims require that the "general purpose computer" "provide guidance to rescue personnel trained in CPR for resuscitating a victim *under an emergency condition*." Freeman Decl., Ex. A, col. 9, ll. 46-48; col. 10, ll. 40-43; col. 11, ll. 35-36; col. 12, ll. 39-41; col. 13, ll. 23-26 (emphasis added).  But RescueNet cannot be used during an emergency, and is not designed to provide any guidance to rescue personnel during an emergency condition.  *See* Freeman Decl., ¶ 6.  Rather, it can only interact with the AED Plus after the rescue event – that is, the emergency condition – has ended.  *Id.*

**C.**     **Plaintiff Distinguished a Device With The Same Structure as the AED Plus During Prosecution of the '685 Patent.**

Finally, during prosecution of the '685 patent, Hutchins *expressly distinguished* his professed invention from U.S. Patent No. 5,088,037 to Battaglia, involving a portable emergency device operating on a dedicated microprocessor – that is, a device with the nearly identical

---

[3] Plaintiff's disputed "facts" are simply bare assertions not supported by any competent evidence.  For example, plaintiff surmises that the AED Plus is capable of running multiple unrelated programs because "the factory would install a multitude of programs with variations based upon the features that a customer requires."  Plaintiff's Rule 56.1 Memorandum at 2, ¶ 4.  This so-called "fact" is not supported by a citation to any document, testimony, or affidavit.  Moreover, it is dead wrong.  As explained in the Freeman Declaration, the AED Plus runs a single, fixed program which is pre-set at the factory.  Freeman Decl., ¶¶ 5, 8.  The user has no ability to change programs, and cannot request different program "features."  *Id.* ¶ 8.

internal structure as the AED Plus.  In doing so, plaintiff changed the language of his claims from "computer system" to "general purpose computer system" and added for the first time the requirement of an "interactive display input."  Singer Decl., Ex. F.  Hutchins admits as much, but now argues that these amendments were designed "to show that Hutchins' new invention was not built around the same type of simple microprocessor that dr[o]ve patent '800" – *i.e.*, his earlier CPR prompting patent.  Opposition at 6.  But this is just revisionist history, as shown by the prosecution history of the '685 patent.  In fact, plaintiff's '800 patent is not distinguished – or even mentioned – in the amendments to the '685 application.  *See* Singer Decl., Ex. F.  Instead, it is plain that the amendments were made in part to distinguish plaintiff's professed invention from Battaglia's device – a special-purpose device driven by a dedicated microprocessor, like the AED Plus.  *See id.*  Plaintiff relinquished the subject matter of the AED Plus during prosecution of the '685 patent; he cannot reclaim it here.  *See Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1322 (Fed. Cir. 1999).

## II.     Plaintiff Cannot Identify Any Copyrightable Subject Matter That Is Allegedly Infringed.

With respect to plaintiff's copyright claims, plaintiff still has not identified a single word or phrase in his "Script and Word List" that he alleges was copied by Zoll.  Instead, plaintiff simply asserts – with no support or elucidation – that "many of the words and phrases" found in the "Script and Word List" are used by the AED Plus.  Opposition at 7.  This inability to identify the allegedly copied material is sufficient in itself to doom plaintiff's copyright claims.  *See Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 33 (1st Cir. 2001) (to prove infringement, copyright owner must prove illicit copying of protected work).

As Zoll has shown, only four words and phrases out of the hundreds in the "Script and Word List" bear any similarity to the verbal commands used by the AED Plus.  Freeman Decl.,

8

¶ 14; *see also* Zoll's Memorandum in Support of Motion for Summary Judgment at 16-18. Furthermore, to the extent Zoll's commands are similar to terms used in plaintiff's copyrighted works, it is because they all derive from the American Heart Association's basic protocol for CPR, which plaintiff acknowledges has not changed in over 40 years. Zoll copied nothing from plaintiff, and plaintiff is simply mistaken if he believes that his specific adaptation of the established CPR protocol gives him exclusive rights to any device making use of that general protocol. As a matter of basic copyright law, plaintiff's rights do not extend beyond the narrow, specific format of his own copyrightable subject matter. *See, e.g.*, 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

Plaintiff's software copyright claim fares no better. Plaintiff has not produced any evidence that Zoll copied any aspect of his software program. In fact, he has not even *identified* any portion of his software that was allegedly copied beyond an alleged program requirement "to produce 100 compressions per minute and to output this timing to the rescuer," which plaintiff raised for the first time in his Rule 56.1 Memorandum. *See* Plaintiff's Rule 56.1 Memorandum at 6-7, ¶¶ 22-23. Once again, this single, bare allegation is not enough to defeat summary judgment. To the extent both programs do have such prompting, it is driven entirely by the demands of the marketplace and cannot form the basis for infringement.[4] It is well-established that program similarities that are dictated by end user requirements "should play no role in determining whether the structure and organization of two programs are substantially similar." 4

---

[4] The established CPR protocol recommends chest compressions at the rate of 100 per minute. *See* Singer Decl., Ex. I, at I-41. Accordingly, any manufacturer of a device incorporating CPR prompting features would naturally follow the CPR protocol in order to provide a safe, workable device for its customers and potential customers.

Nimmer on Copyright § 13.03[F][3][e] at 13-137; *see also Plains Cotton Coop. Ass'n v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1262 & n.4 (5th Cir. 1987) (affirming denial of a preliminary injunction for copyright infringement in part due to evidence that similarities between two computer programs were dictated by externalities of the cotton market).

**III.    The Parties' Consent Agreement Had Nothing to Do with a License.**

Finally, summary judgment must be granted to Zoll on plaintiff's breach of contract claim because the plain language of the 2003 Consent Agreement – the parties' only agreement – neither creates a license nor compels either party to negotiate a license.  Contrary to plaintiff's assertions, the Consent Agreement was designed solely to memorialize plaintiff's consent to allowing Zoll's patent counsel, a partner at the same law firm at plaintiff's patent counsel, to review plaintiff's patents on Zoll's behalf.  *See* Freeman Decl., Ex. F.  Thus, when plaintiff says that "the wording of the Consent Agreement … specified that the purpose of the review was Zoll's desire to license the '685 patent," he is demonstrably incorrect.  Nothing in the Consent Agreement expressed Zoll's desire to license the '685 patent, or bound either party to enter into a license agreement or to work toward a license agreement.  Plaintiff may be frustrated that Zoll ultimately chose not to pursue a license for his patents, but he cannot hold Zoll to a promise that Zoll never made.

**CONCLUSION**

For the foregoing reasons, and the reasons set forth in its Memorandum in Support of its Motion for Summary Judgment, Zoll respectfully requests that this Court grant summary judgment in Zoll's favor on all counts of the Complaint.

Respectfully submitted,


/s/ Jordan M. Singer
John C. Englander (BBO # 542532)
Jordan M. Singer (BBO #651068)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
Fax: (617) 523-1231

Attorneys for Defendant
Zoll Medical Corporation

Dated: August 31, 2005

LIBA/1575976.3

11