UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br><br>    Plaintiff )<br><br>v. )<br><br>ZOLL MEDICAL CORPORATION )<br><br>    Defendant ) | Civil Action: **04-30121-MAP** |

## PLAINTIFF'S MEMORANDUM OF LAW CONTROVERTING DEFENDANT ZOLL MEDICAL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Donald C. Hutchins, ("Hutchins") disputes many of the statements that the Defendant, Zoll Medical Corporation ("Zoll") states in its Reply in Support of its Motion for Summary Judgment. Zoll has taken Hutchins' words out of context to misguide the Court into believing that the parties have agreed upon claims construction. This is a blatantly false statement because Hutchins has never agreed to the claims construction filed by Zoll. The truth is contained in Hutchins' Affidavit included herein as Exhibit #1 together with the full document on which Zoll's falsehood relies.

Further deceptions from Zoll are based on the declaration of Gary A. Freeman, a Zoll employee with debatable credentials that limit his validity as an expert witness. Mr. Freeman's biased testimony is rebutted by the testimony of Robert Jeffway ("Jeffway"), an expert in the field of digital speech and microprocessor programming. Jeffway's Affidavit is attached herein as Exhibit #2. Mr. Jeffway's name was also included on Plaintiff's list of witnesses presented to Zoll during Discovery. Mr. Jeffway lives in Massachusetts and is prepared to testify as an expert witness if called.

## ARGUMENT

**I.    THE *AED PLUS* INFRINGES CERTAIN CLAIMS OF THE '685 PATENT BECAUSE THE PARTIES <u>HAVE NOT</u> AGREED ON HOW THOSE CLAIMS SHOULD BE CONSTRUED.**

In its Reply Zoll has falsely stated that, "The parties have already agreed to the proper construction of the salient claims of U.S. Patent No. 5,913,685 (the '685 patent"). Zoll has based this false claim by misrepresenting a statement made by Hutchins in an affidavit submitted to this Court on March 2, 2005. Hutchins' Affidavit, attached as Exhibit #1, corrects this misinterpretation and includes the full text of Hutchins' March 2, 2005 statement as proof of Zoll's deceit. Because there has been no agreed-upon *claim construction* between the parties, the case law cited by Zoll in <u>Seal-Flex, Inc. v. Athletic Track & Court Construction</u> is not relevant to this action.

Hutchins' *claim construction* of the '685 patent shows the relationship of each infringing element of the *AED Plus* compared to each infringed claim of the '685 patent. In contrast, Zoll's responding *claim construction* included only dictionary definitions. Zoll's *claim construction* presented no denial of the infringing elements such as the claims involving an "**interactive display input**" or a "**general-purpose computer**" that Hutchins had previously related to the offending *AED Plus* device. These offending elements are addressed again in the testimony of Hutchins and the expert opinion of Robert Jeffway attached as Exhibits #1 & #2.

This Memorandum presents a digested version of the *claim construction* that Hutchins filed with the Court on January 14, 2005. It covers only the claims of '685 that are listed as infringing in Counts III, IV, V, and VI of the Complaint. Hutchins understands that the Court will first consider the claims in light of the intrinsic evidence, namely the patent claims themselves, the specifications, and applicable prosecution history, if it is of evidence.

The claim language is given its ordinary meaning to one skilled in the art. <u>Thermalloy, Inc. v. Aavid Engineering, Inc.</u> 935F. Supp. 55,59 (D NH 1996). Affirmed,

121 F.3d. 691 (Fed. Dir. 1997. In this case the claim language should be given its ordinary meaning as Hutchins as inventor has not used the language differently.

## II.    THE COMPLAINT CITES AND HUTCHINS' CLAIM CONSTRUCTION DESCRIBES ELEMENTS OF THE *AED PLUS* THAT INFRINGE '685.

### A.    Complaint - Count III  (Patent Infringement by Means of Sales)

Hutchins' Complaint states that Zoll has infringed Claims 1, 2, 3, 4, 6, 8 of Patent '685 through the development and sale of a defibrillator called *AED Plus*. Claim 1 is an independent Claim and Claims 2, 3, 4, 6, and 8 are dependent on Claim 1. Zoll's proposed meaning for the term "**general-purpose computer system**" contained on page 1 of Exhibit #3 attached describes the Hitachi SuperH RISC general-purpose computer that drives the infringing *AED Plus*. The acoustical speaker meets Zoll's definition of "**electroacoustical transducer**" and the LED lights, LCD display and graphic depictions of the *AED Plus* meet Zoll's definition of "**output**" and "**display**." Zoll's description of "**Input**" is met by the pressing of buttons, on/off switches and pulse signals from the electrodes placed on the victim. The combination of the *AED Plus* electroacoustical transducer, output, display and input clearly fit Zoll's definition of "**interactive display input**" found on page 3 of Zoll's *claim construction* attached as Exhibit #3.

The phrase "**characteristics of said victim relevant to proper performance of CPR techniques**" is defined by Zoll to mean the traits or qualities of the victim, such as adult or baby, pulse or no pulse, etc. The *AED Plus* currently being sold reacts with different output depending upon the input characteristics such as, adult or baby and pulse or no pulse clearly infringing on this Claim of '685. "**Producing information signals corresponding** to the characteristics of said victim represented by said image or text selected with said interactive display unit." The *AED Plus* produces sounds as **information signals** to guide rescuers in the timing of compressions for either adult or baby victims as selected and input by keys or switches activated by the rescuer using the interactive display of the LCD and LED lights for guidance. A "**processing unit**" is part of and acts as the brain of the Hitachi SuperH RISC general-purpose computer that drives the *AED Plus* to produce the CPR "**guidance signals**", "**speech signals**" such as, "remain calm" and visible signals that mark the graphics with an LED "**visible signal**"

Hutchins' dependent Claim 2 is infringed the by LED signals of the AED Plus as they ponit-out the specific "**pictorial representation**" that guides the rescuer through the steps of CPR.   These pictorial representations are in the graphic form of "**animations**" and "**animated sequences**" as taught by Hutchins' dependent Claims 3.and 4.  The AED Plus infringes Hutchins' Claim 6 by the "**visible display**" of "**text signals**" such as the words, "CHECK REPSONSIVENESS" on the Liquid Crystal Display ("LCD"). Hutchins dependent Claim 8 is infringed as the *AED Plus* Hitachi SuperH RISC general-purpose computer "**queries**" the timing and depth of compressions and responds with an instruction to go deeper or at a faster pace.

B.    **Complaint - Count IV  (Patent Infringement by Means of Manufacture)**

Hutchins' Complaint states that Zoll has infringed Claims 21, 22, 23, 24, 25, 26, and 28 of Patent #5,913,685 through the manufacture of a defibrillator called *AED Plus*. Claim 21 is an independent Claim and Claims 22, 23, 24, 26, and 28 are dependent on Claim 21.  Zoll does not deny that the AED Plus is an "**article of manufacture**".   Zoll correctly ascribes the meaning of the term, "**computer readable program code**" as a computer program.  The *AED Plus* uses the computer language "C" as imbedded "**computer readable program code**" to drive its Hitachi SuperH RISC "**general-purpose computer**". Claim 21 introduces Zoll's proposed meaning for the term "**to produce**" contained on page 10 of Exhibit #3 attached describes the production of the various CPR prompting instructions of the Hitachi SuperH RISC general-purpose computer that drives the infringing *AED Plus*.  This program code produces visible signals "**synchronized**" with the audible speech signals as displayed by the sounds, text and graphics used for CPR compression instructions from the *AED Plus*.  Hutchins' Claim 24 teaches that animated pictorial "**icon representations**" such as those on the front cover of the *AED Plus* and the LED lights, LCD display and graphic depictions of the *AED Plus* meet Zoll's definition requirements as stated in its *claim construction*. These "**computer programs**" installed in the *AED Plus* also produces signals for the electronic "**recording,**" "**storage,**"  "**output,**" and "**display,**" of CPR rescue data..

Many of Hutchins' claims for the sale of the AED Plus are mirrored in his claims for the manufacture of the AED Plus. Zoll's description of "**Input**" is met by the

4

pressing of buttons, on/off switches and pulse signals from the electrodes placed on the victim. The combination of the *AED Plus* electroacoustical transducer, output, display and input clearly fit Zoll's definition of "**interactive display input**" found on page 3 of Zoll's *claim construction* attached as Exhibit #3. Hutchins' claim 28 teaches the use of computer readable code to "**store**" and "**record**" CPR rescue records. The ability to store and download of CPR rescue data is a feature of the AED Plus.

C.    **Complaint - Count V (Patent Infringement by Means of Computer Program)**

Zoll has and continues to infringe Claims 31, 32, 33, 34, 35 and 36 of Patent '685 through the addition of computer functions to the automatic defibrillator called *AED Plus*. Zoll's definition of the terms "**program**," "**configuring**," "**read**," and "**executed**" describes many of the guidance signals of the computer program that was written in "C" and used by the *AED Plus* to provide guidance signals to rescue personnel trained in CPR. These functions are taught in independent Claim 31 of the infringed patent and compatible with the term descriptions provided by Zoll on page 11 and 12 of their claims construction.

In its *claim construction* Zoll does not deny that the visible signals claimed in Claim 32 that are synchronized with audible signals as Claim 33 are found in the *AED Plus*. Neither has Zoll responded to Hutchins' claims of infringement based on the use of program storage, the algorithms, and functions that are currently used by the *AED Plus* and claimed by Hutchins in Claim 36.

D.    **Complaint - Count VI (Patent Infringement by Means of a Computer Network, Output, Transmission, Record Keeping and Storage)**

Zoll has and continues to infringe Claims 13, 36 and 43 of Patent '685 by including what Zoll refers to as *Rescue Net* as a part of the *AED Plus*. *Rescue Net* is a feature of the *AED Plus* and Zoll's network servers that automatically record rescue data such as date, time, type and duration of each rescue procedure. This data is placed in memory to be downloaded through a standard IRDA computer port and stored in network computers to be archived as medical and insurance records. These functions are claimed in Claims 13, 36 and 43 and easily understood by viewing FIG 2 of Patent '685.

Zoll has not used their *claim construction* to defend the infringement of Hutchins'
Claims 13, 36 and 43 by the *AED Plus* with the exception of defining the term "**storage
medium**" as "any device used to record and store computer data," on page 15 of this
document. The *AED Plus* uses memory storage medium to transmit rescue data such as
time, date, etc. through the port as part of Zoll's *Rescue Net* computer software program
thereby infringing Hutchins Patent '685.

III.    **THE ARUGUMENTS CONTAINED IN ZOLL'S REPLY IN SUPPORT OF
        ITS MOTION FOR SUMMARY JUDGMENT ARE FLAWED**

        A.    **The *AED Plus* Does Have An "Interactive Display Input"**

        Hutchins' *claim construction* and the preceding digested version clearly show the
relationship of each infringing element of the *AED Plus* compared to each infringed
claim of the '685 patent. The elements that make up the interactive display input as they
relate to the *AED Plus* are precisely diagrammed in ¶II A and ¶II B of this text. While
Hutchins has not agreed upon the definitions that Zoll has presented in its *claim
construction*, the elements addressed in ¶II A and ¶II B do meet Zoll's definitions.

        B.    **The *AED Plus* Does Feature a "General Purpose Computer."**

        Zoll is incorrect in its argument that every claim of the '685 patent requires a
"computer." Infringed independent Claims 1 of '685 teaches a "**general-purpose
computer system**" that would include a "general-purpose computer." Such as the Hitachi
SuperH RISC computer that runs the *AED Plus*. Independent Claims 2 through 12
describe elements that could be included in this computer system.

        Independent claim 13 teaches "A general-purpose computer network."
Independent Claim 21 teaches "An article of manufacture, comprising a computer usable
medium ,,," Independent Claim 31 teaches "A computer program." Independent Claim
39 teaches "A method of use ..." Zoll is in error when it states that every claim of the
'685 patent requires a "general-purpose computer."

        The testimony of Robert Jeffway, an expert in the filed of microprocessors, attests
to the fact that the Hitachi SuperH RISC processor that controls the *AED Plus* is a
"general-purpose computer" per the attached Exhibit #1.

        C.    **Zoll's Claim Construction Did Not Address Any Issues Related To
              The Patent History or Prosecution of the '685 Patent.**

After months of litigation in which Hutchins provided two patent file histories, over 4000 sheets of discovery material, and two patent *claim constructions*, for the first time argues that U.S. Patent No. 5,088,037 describes "a device that is nearly identical to the internal structure of the *AED Plus*." It is clear that in its thirst to save the day for its client, Zoll's attorneys have dredged for any possible escape from justice. The Court should understand that during prosecution of patent '685 Hutchins' primary task was to distinguish his new invention from the invention taught in his original Patent No. Re 34,800. Battaglia's No. 5,088,037 was based on a dedicated microprocessor as was Hutchins' Re 34,800. Patent '685 was one of the first software patents that taught the use of computers and computer networks. It has been proven that the *AED Plus* uses a Hitachi SuperH RISC general-purpose computer to guide rescuers through CPR procedures. The distinguishes the general-purpose computer used in the *AED Plus* from the obsolete 20-year old technology of Battaglia's dedicated microprocessor or Hutchins' simple 4-bit processor used to control the CPR Prompt®.

### D.    Plaintiff Has Supplied Zoll With The Two Infringed Copyrights Plus Audit Trails to The Infringing Electronic Media of the AED Plus.

Hutchins Registration Number TXu-210-208 with the title, "*Script & Word List, CPR PROMPT*" is a text copy of words and phrases that were digitized into electronic form and used for CPR prompting for the first time and registered September 13, 1985 by Hutchins. Many of the words and phrases from *the script and word list* authored, recorded and digitized by Hutchins in 1985 are being used in Zoll's *AED Plus*. Hutchins sent a copy of this word list pertaining to this copyright to Attorney Englander on November 27, 2004 as part of voluntary discovery. The CPR Prompt® device that produces these electronic phrases carried a written "notice of registration." As the only CPR prompting device in the safety industry for the past 18 years, the copyrighted words and phrases of the CPR Prompt® are well known to employees of Zoll. A high percentage of the voice prompts currently used by the *AED Plus* that are identical to those of Hutchins' copyrighted *scrip and word list* can be found in Zoll discovery #0234, page 15 of the *AED Plus Administrator's Guide*. This evidence was presented by Hutchins in his Exhibit E of Plaintiff's "Memorandum of Law in Support of his Motion for Summary Judgment" filed June 22, 2005.

Hutchins Registration Number TXu-213-859 with the title, *"LC5800 series cross assembler"* is a text copy of CPR prompting software that was written by Hutchins and used for CPR prompting for the first time and registered September 13, 1985. Zoll's *AED Plus* is using many of the CPR prompting algorithms created by Hutchins in 1985. These algorithms are designed to produce the standard for repetitive phrases, timing and rate as taught by the American Heart Association. Hutchins sent a copy of the programs pertaining to this copyright to Attorney Englander on November 24, 2004 as part of voluntary discovery. The CPR Prompt® device that includes these programs has carried a written "notice of registration." As the only CPR prompting device in the safety industry for the past 18 years, the copyrighted software programming of the CPR Prompt® is well known to employees of Zoll who developed the offending *AED Plus*.

### E.    Zoll's Invitation to Hutchins to Negotiate License Agreement, The Email Exchanges, License Discussions and Consent Agreement Are Evidence of and Understood by Business Persons to Be a Contract Between the Parties to Negotiate in Good Faith.

Page 4 of Plaintiff's "Memorandum of Law in Support of his Motion for Summary Judgment" filed June 22, 2005 has addressed Zoll's misconception that Hutchins relies only on the parties' Consent Agreement as the foundation of Count II of his Complaint. In this Summary Judgment Memorandum Hutchins states:

"Zoll Discovery 0255 attached herein as Exhibit F indicates that on August 11, 2003 Gary Freeman, the Vice President of Clinical Affairs at Zoll initiated discussions regarding the licensing of Hutchins CPR Prompt patents which led to a contract allowing patent Attorney Lee to consult. After August 11, 2003 as Hutchins continued to negotiate in good faith it is evident that Freeman was using these discussions to misappropriate Hutchins inventions and copyrights. Zoll Discovery 0296-0315 is a Patent Application Publication No. US 2004/017807 A1, entitled *Integrated Resuscitation.* This Application that describes, "voice and graphic instruction to perform CPR" and emulates Hutchins' copyrighted and patented phrases such as, "Shake victim gently and yell, are you OK" was filed March 18, 2004. This Patent Application herein attached as Exhibit G, is proof that Freeman was working with Attorney Lee to develop a CPR prompting patent for Zoll, after contracting to license Hutchins' patents."

### CONCLUSION

As set forth above, Plaintiff Donald C. Hutchins disputes most of the statements that the Defendant, Zoll Medical Corporation characterizes as facts. The Court should

not accept the Declaration of Gary A. Freeman, upon which Zoll's case is based, as either true or accurate. It will not stand-up to the scrutiny of cross-examination.

Most distressing to Hutchins is Zoll's attempt to deceive the Court into believing that Hutchins "agreed to Zoll's *claim construction* in its entirety." Hutchins Affidavit attached as Exhibit #1 exposes Zoll's statement as a blatant and deceitful lie.

<div style="margin-left:40%">

Respectfully submitted

The Plaintiff
Donald C. Hutchins, Pro Se

</div>

Dated: October 7, 2005

<div style="margin-left:40%">

1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 567-0606
(413) 739-4060 (facsimile)

</div>

<div align="center">

## CERTIFICATE OF SERVICE

</div>

I, Donald C. Hutchins, 1047 Longmeadow Street, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by mail to Jordan M. Singer, Esq., Goodwin Proctor LLP, Exchange Place, Boston, MA 02109.

Dated: 10/7/05

<div style="margin-left:40%">

Donald C. Hutchins

</div>

<div align="center">9</div>

1

# EXHIBIT #1

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS ) | |
| ) | |
| Plaintiff ) | |
| ) | **AFFIDAVIT OF** |
| v. ) | **DONALD C. HUTCHINS** |
| ) | |
| ZOLL MEDICAL CORPORATION ) | |
| ) | |
| Defendant ) | |
| ) | |

NOW COMES DONALD C. HUTCHINS and upon being duly sworn, states that:

1.  I am over 18 years of age and have personal knowledge of the matters attested to herein.

2.  I dispute many of the statements that the Defendant, Zoll Medical Corporation has made in its Reply in Support of its Motion for Summary Judgment.

3.  Zoll has taken my words out of context to misguide the Court into believing that the parties have agreed upon *claim construction*. This is a blatantly false statement because I have never agreed to the *claim construction* filed by Zoll.

4.  In its Reply Zoll has falsely stated that, "The parties have already agreed to the proper construction of the salient claims of U.S. Patent No. 5,913,685 (the '685 patent").

5.  Zoll misrepresents a statement I made in an affidavit that was submitted to this Court on March 2, 2005. My affidavit when read completely is truly an indictment of Zoll's acts of infringement on my '685 Patent as can be seen in Exhibit A attached to this Affidavit.

6.  Zoll has based this false representation that I have agreed to their *claim construction* on ¶6 of my affidavit that reads:

*"I can agree with the definitions held by Zoll in Zoll's claim construction and appendix filed with the court on March 2, 2005. I believe that Zoll's claim construction and definitions support my Complaint of patent infringement of U.S. Patent No. 5,913,685 as it relates to Zoll's manufacture and sale of the AED Plus defibrillator and RescueNet software."*

7.    Zoll presented an innocuous *claim construction* that included only definitions of words contained in my Patent. There was no denial of Zoll's infringement, no audit trail to the elements of the patent as they would relate or not relate to the *AED Plus*, no citation of prosecution irregularities or any comments that would indicate that the Zoll understands my invention as it relates to the AED Plus.

8.    My Patent was drawn in plain language in non-technical terms on a subject understood by most people. I believe that Zoll can not find definitions that are at odds with my invention.

9.    However, it is a big leap from my saying that I can live with arguing their definitions to Zoll's perjurious statement that reads, "The parties have already agreed to the proper construction of the salient claims of U.S. Patent No. 5,913,685 (the '685 patent")."

10.    I believe that the Defendant continues to infringe my Patent and that Zoll's claim construction offers nothing that can assist the Court in resolving significant issues in this action. The easiest way for the Court to decide is for the Court to read my Patent and compare it to the *AED Plus* device. Then the Court would follow by examining Zoll's *RescueNet* Software that ties the AED Plus to Zoll's network server rescue-database.

11.    I repeat. I have not agreed to the claims construction filed by Zoll.

FURTHER AFFIANT SAYETH NAUGHT.

DONALD C. HUTCHINS

Sworn to before me and subscribed in my presence the 7th day of October, 2005

NOTARY PUBLIC

2

# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br><br>Plaintiff )<br><br>v. )<br><br>ZOLL MEDICAL CORPORATION )<br><br>Defendant ) | **AFFIDAVIT OF**<br>**DONALD C. HUTCHINS** |

NOW COMES DONALD C. HUTCHINS and upon being duly sworn, states that:

1.  I am over 18 years of age and have personal knowledge of the matters attested to herein.

2.  On February 28, 2005, Attorney Jordan M Singer sent a letter to me that stated, "We are in receipt of a document entitled "United States Patent No. 5,913,685 – Plaintiff's Claim Construction Memorandum." To date, we have not received from you any proposed claim construction for U.S. Patent No. Re 34,800.

3.  Attorney Singer concluded by writing, "We understand your claim construction memorandum to mean that only the '685 patent is currently being asserted against Zoll. If this understanding is incorrect, please advise us as to when you will be providing a proposed claim construction for the '800 patent."

4.  On March 2, 2005, Attorney Singer provided me with a copy of *Zoll Medical Corporation's claim construction and appendix for United States Patent No. 5,913,685* which was filed with the Court the same day.

5.  Paragraph 14, of the Complaint that frames this infringement action discusses a phone conversation between Donald C. Hutchins, the Plaintiff and Richard Packer, the President of Zoll that took place May 5, 2003. Paragraph 14, states,

"Hutchins explained that if he allowed Zoll to infringe that other defibrillator manufacturers would do the same and cause Hutchins great financial damage in loss of royalties. The conversation was very congenial and Mr. Packer indicated a desire to talk further about licensing Hutchins' Patent. He did indicate that Zoll had reviewed all of Hutchins' patents dealing with CPR while in the process of developing *AED Plus*. He said that it was the opinion at Zoll that the *AED Plus* would not infringe on Patent Number 5,913,685 because the *AED Plus* used a microprocessor rather than a computer to generate voice and graphic prompting. Hutchins reacted to this explanation by telling Mr. Packer that it was commonly known that a microprocessor is a computer on a chip."

6.    I can agree with the definitions held by Zoll in Zoll's claim construction and appendix filed with the court on March 2, 2005. I believe that Zoll's claim construction and definitions support my Complaint of patent infringement U.S. Patent No. 5,913,685 as it relate to Zoll's manufacture and sale of the *AED Plus* defibrillator and *RescueNet* software.

7.    Zoll's claim construction defines the term general purpose computer as a "computer capable of running multiple unrelated programs, which are selected by the user and loaded into the device." The *AED Plus* processor is a computer that runs unrelated programs such as the program that senses the lack of pulse, the program that calls for the spoken words, the program that retrieves and stores rescue data and the multiple programs that energize and defibrillate. These are all unrelated programs that may or may not be called into use by the *AED Plus* depending upon the condition of the victim.

8.    Zoll's claim construction also states that a general purpose computer, "must feature at least (1) a central processing unit, (2) one or more input devices, (3) memory, (4) mass storage devices, (5) one or more output devices." The AED Plus has a central processing unit (CPU); keys, buttons, adhesive sensing pads, ports, etc., for input; computer memory with logic for defibrillation, speech, graphics and instructions for rescuers; mass storage to hold rescue data for *RescueNet* data base archives; an IRDA port, speaker, graphic display, etc. for

2

output. In simple terms, the AED Plus has all the features defined by Zoll's claim construction definition as "must features" of a general purpose computer.

9. Zoll's claim construction defines a general purpose computer network system as, "a set of computers and/or peripheral units connected together to permit two-way communication." Again, I agree with Zoll's definition. It should be noted that the *AED Plus* uses an IRDA port and Zoll's *RescueNet* software to communicate rescue data to a data bases stored on network servers. The IRDA port is a two-way port that only functions when the server communicates to the AED Plus computer chip. After recognition, the AED Plus sends the data that has been stored in RAM as instructed by the AED Plus computer's central processing unit (CPU).

10. The Zoll claim construction for Hutchins Patent No. 5,913, 685 as presented to me and the Court by Attorney Singer on March 2, 2005 contains no information on which Zoll can support a defense against the allegations presented in my Complaint.

11. Zoll is infringing on my Patent #5,913,685 through the manufacture and sale of *AED Plus.*

12. Zoll is infringing on my Patent #5,913,685 and my Copyright filed with the Library of Congress by copying my software design for speech and graphic CPR prompting for use with *RescueNet™.*


FURTHER AFFIANT SAYETH NAUGHT.

_____
DONALD C. HUTCHINS


Sworn to before me and subscribed in my presence the 25th day of March, 2005

_____
NOTARY PUBLIC

3

2

# EXHIBIT #2

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS )<br><br>Plaintiff )<br><br>v. )<br><br>ZOLL MEDICAL CORPORATION )<br><br>Defendant ) | Civil Action: **04-30121-MAP** |

## AFFIDAVIT OF ROBERT W. JEFFWAY

NOW COMES ROBERT W. JEFFWAY and upon being duly sworn, states that:

1.  I am over 18 years of age and have personal knowledge of the matters attested to herein.

2.  I reside at 37 Front Street, Leeds, Massachusetts 01053, Tel. 413 585-8819.

3.  I graduated from the University of Massachusetts with a degree in Computer Systems Engineering in 1977.

4.  I worked at Digital Equipment Corp. ("DEC") and Milton Bradley Co. For the past 22 years I have operated my own business designing electronics for toys and games. My place of business is 66 Old State Road, Rt. 8, South Deerfield, MA 01373, tel. 413-665-2124.

5.  While employed at DEC and Milton Bradley and for the past 22 years my occupation has involved the programming and specification development of microprocessors for a wide range of applications.

6.  Since I graduated from college, microprocessors have evolved from simple 4-bit processors masked for specific simple tasks to today's state of the art microprocessors that are general purpose microcomputers that can be programmed to meet the needs of many different industries.

7.  With the addition of: read only memory, random access memory, input/output and a central processing unit, microprocessors emerged as full blown computers that control most of today's electronic instruments.

8.  I have reviewed documentation related to Zoll's *AED Plus* device and *RescueNet*™ networking software that was provided to Hutchins by Zoll as part of Discovery in Civil Action: 04-30121-MAP.

9.  The *AED Plus* uses a Hitachi SuperH RISC computer as described in Zoll's document #0318 attached to this affidavit as Exhibit A. The SuperH RISC microprocessor is in the category of "microcomputer" and known in the industry as a "computer on a chip."

10. The acronym RISC of the SuperH™ RISC engine is defined as "Reduced Instruction Set Computer. It is similar to the Pentium family of RISC processors used in most personal computers that use the *Microsoft Windows* operating system. The SuperH exceeds certain performance features of the earlier processors in the Pentium family.

11. A good description of the computer that drives the *AED Plus* can be found on page 14 of *Great Processors of the Past and Present* attached herein as Exhibit B. Exhibit B states that it is most prominently feature in the *Sega Saturn* video game system and *Dreamcast* and many *Windows CE* handheld/pocket computers.

2

12.    Evidence that the SuperH™ is a general purpose computer that is programmed for

use in a variety of applications is found in Exhibit C that shows the SuperH

processor as being used as a general purpose computer in mobile phones, digital

cameras, electronic vapor analyzer and a wearable computer.

13.    The SuperH™ processor that controls the *AED Plus* and Zoll's *Rescue Net*

network software is programmed in "C".  C programming is defined in the

Wikipedia encyclopedia pages attached as Exhibit D as a "Computer

programming language."

FURTHER AFFIANT SAYETH NAUGHT.

On this 16 day of September, 2005, before
me, the undersigned notary public, personally appeared
Robert W. Jeffway
proved to me through satisfactory evidence of identification,
which was Drivers Licence, to be the person whose
name is signed on the preceding or attached document and
acknowledged to me that he/she signed it voluntarily for its stated
purposes.

Dawn Hibbert
Notary Public
My Commission Expires
2-2-12

_____
ROBERT W. JEFFWAY
37 Front Street
Leeds, MA 01053
Tel. 413-585-8819

~~Sworn to before me and subscribed in my presence the _____ of August, 2005~~

Dawn Hibbert
NOTARY PUBLIC

DAWN E. HIBBERT
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 2, 2012

3

# EXHIBIT A