UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD C. HUTCHINS ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action: **04-30121-MAP** |
| vi. ) | |
| ) | |
| ZOLL MEDICAL CORPORATION ) | |
| ) | |
| Defendant ) | |

**PLAINTIFF'S BRIEF CONTROVERTING
DEFENDANT ZOLL MEDICAL CORPORATION'S ARGUMENTS
MADE AT THE MOTION HEARING OF FEBRUARY 22, 2006**

**INTRODUCTION**

Plaintiff Donald C. Hutchins, ("Hutchins") disputes many of the statements that the Defendant, Zoll Medical Corporation ("Zoll") presented at the Motion Hearing of February 22, 2006. The Docket Text announcing the Hearing specified the following: NOTICE of Hearing on [32] MOTION for Hearing, [14] MOTION for Summary Judgment, [39] MOTION to strike affidavit of Robert W. Jeffway, [20] MOTION for Summary Judgment. Attorney John Englander ignored questions of law that applied to Zoll's Motion for Summary Judgment in favor of arguing issues of fact.

For his presentation Attorney Englander introduced a 3 ring binder that included presentation materials that emphasized three genuine issues of fact for which he presented arguments. Hutchins disputes Attorney Englander's arguments as follows:

**I. Zoll Employs a General Purpose Computer in the *AEDPlus* for CPR Prompting.**

Attorney Englander offered the following definition:

The term **"general purpose computer"** means a computer capable of running multiple unrelated programs, which are selected by the user and loaded into the device. It must feature at least: (1) a central processing unit, (2) one or more input devices that are not specific to any one program, (3) memory, (4) mass storage

devices (such as a disc drive) for storing large amounts of data, and (5) one or more output devices.

Hutchins had no problem accepting the definition that Attorney Englander had offered because it fits Hutchins' concept of a general-purpose computer. When the Court asked Hutchins to respond he argued that it is an undisputed fact that the Hitachi SuperH RISC general-purpose computer drives the infringing *AED Plus*. Hutchins directed the Court to Exhibits A, B, C, and D of Plaintiff's Memorandum of Law in Support of His Motion Summary Judgment docketed [14] at issue at the Hearing. These materials are assembled and attached herein as Exhibit 1 for easy reference.

As used in the *AEDPlus* the Hitachi SuperH RISC fits the definition supplied by Attorney Englander namely it runs such unrelated programs as defibrillation sensing, graphing, CPR speech prompting, CPR graphics prompting, data collection, communication, memory data bank, LCD driver, LED driver, diagnostics and many more separate and distinct programs installed in the *AEDPlus*. Many of these programs are buyer options that can be turned on or off or added as subroutines by the user or factory. A person with ordinary skills in the arts of CPR, computer science or modern technology is capable of understanding that the *AEDPlus* fits Attorney Englander's definition in that it uses (1) a central processing unit, (2) one or more input devices that are not specific to any one program, (3) memory, (4) mass storage devices (such as a disc drive) for storing large amounts of data, and (5) one or more output devices.

## II.     Zoll Employs Interactive Display Input in the *AEDPlus*.

Attorney Englander offered the following definition:

> The term "**interactive display input**" means "a device for communicating with a computer which allows a user to respond to options presented by the computer by selecting from a menu displayed on a display screen."

Again Attorney Englander's argument is misleading in that he does not understand that the *AEDPlus* uses both an LCD screen and LED lights as means of communication. In reaction to the LCD screen, the rescuer knows when to stop the AED function and start the CPR function in the rescue sequence. Zoll has stated that 40% of the time only the CPR prompting is needed. At that point the rescuer makes a decision presses a button that calls up the voice and graphic prompting for the CPR portion of the

3

rescue. In programming logic this decision branching directs the *AEDPlus* on a different path with a separate program that brings CPR prompts and timing to the rescuer.

Recently Zoll added the *AEDPRO* to its rapidly growing family of infringing devices. The description of this product found in Exhibit 2 simplifies the contested issues because the new *AEDPRO* has a large LCD display and two "softkeys" that move the LCD cursor. Anyone that has operated an iPod, cell phone or hand held computer will recognize the technology. This cursor keying means fits Attorney Englander's definition of the term "interactive display input" perfectly. Lest the Court believe that the *AEDPRO* lacks the other infringing features of its brother the *AEDPlus*, please examine Exhibit 3 that contains incriminating pages from the *AEDPRO* instruction manual.

This instruction manual speaks of CPR monitoring, display screen, irDA port for communications, various operating modes controlled by the softkeys, heart rate and heart rate symbol, text prompts, chest compression rate, 15 beeps a minute for CPR compressions, feedback to encourage rescuer to increase rate of compressions, the words good compressions written on the display and also Hutchins' copyrighted digitized phrases such as open airway, check breathing, give two breaths, check pulse, if no pulse start CPR, if no pulse continue CPR, stay calm, call for help, etc.

In addition we find that the *AEDPRO* retrieves, stores and communicates CPR rescue data. Five hours of history can be stored in the mass storage area of the general purpose computer the drives *AEDPRO*. This data can then be transferred through a computer network to a server using Zoll's infringing RescueNet system.

### III.   Attorney Englander Misrepresents the Difference Between a Personal Computer and a General Purpose Computer in Arguing the '685 Prosecution History.

Hutchins needed to differentiate his earlier Patent #Re-34,800 that taught a dedicated masked processor to his later invention that became the '685 patent. Patent '685 lists Re-34,800 first among the 48 patents under "References Cited" Section. This list includes the patents of Battaglia and Lamb for which Attorney Englander finds some sort of impediment in the Prosecution History. The term general-purpose computer includes the more narrow terms computer and personal computer. Patent examiners note areas where they feel there is a need for clarification during the examination process.

4

Attorney Chuck Hieken who has over 40 years experience and is the Bose Corporation patent attorney agreed with the examiner that the term general-purpose computer was more descriptive and gave Hutchins a wider patent than the term computer. Attorney Englander is grasping at straws when he argues about any impediments in the "685 patent prosecution history. There simply are none.

### IV.    Attorney Englander Misrepresents Gary Freeman's Declaration by calling the Declaration an Affidavit.

The Declaration of Gary A. Freeman is herein attached as Exhibit 4. It is clearly not an affidavit because an affidavit by definition is, "A written statement, usually about the truth or a set of facts, sworn before a person who is officially permitted by law to administer an oath."

Attorney Englander argued his case relying on the statements of Gary Freeman, an employee who works under Zoll's Code of Ethics and who has much to lose if Hutchins prevails. While negotiating a license agreement with Hutchins on behalf of Zoll, Freeman conspired with attorney G. Roger Lee of Fish & Richardson ("F&R") to file a patent application that mirrored patent '685 in language, drawings and claims. This conspiracy was confirmed by discovery as part of Hutchins' recent litigation with F&R.

Freeman was familiar with Hutchins CPR prompting copyright and the CPR Prompt because these properties have been the standards in the industry for many years. A few years earlier Freeman had discussed the sublicensing of Hutchins' *CPR Prompt®* with Steven Lindseth who held the *CPR Prompt®* license at the time. Attorney Englander has easy access to notaries in his office and could easily have had Freeman's declaration notarized. The Declaration of Gary Freeman contains many technical errors and misrepresentations of fact. Attorney Englander understands that it is not prudent to use an affidavit that contains lies that can be contested at trial. For these same reasons, Attorney Englander's use of Freeman's Statement in his arguments at the Hearing of February 22nd.should not be given credence by this Court.

### V.    Attorney Steven Korn, the General Counsel of Zoll Receives a wake up call.

Hutchins successfully rebutted Attorney Englander's arguments based on the definitions of general purpose computer, interactive display and the prosecution of patent '685 by citing Exhibits A,B,C, and D of his Motion for Summary Judgment. In rebuttal

5

Attorney Englander argued that Zoll may have started with the infringing general-purpose computer but that the end result was an assembled *AEDPlus* that did not infringe Hutchins' intellectual properties. This is the equivalent to claiming that the tungsten filament of Edison's light bulb patent would infringe but the marketable light bulb that included the tungsten filament would not infringe because it used a glass shroud and brass base.

Hutchins agrees that Zoll's standard defibrillator that has been sold for over 10 years does not infringe. However, the "Plus" technology that was added in 2002 to a standard defibrillator to create the *AEDPlus* contains massive elements of infringement. The concept that the "end result" does not infringe is too convoluted for any reasonable person to accept.. The *AEDPlus's* ability to produce CPR prompting and to collect rescue-data and transmit this data to a network server are the marks of this infringement.

Attorney Steven Korn, the General Counsel of Zoll was sitting in the courtroom during the Hearing. For the first time he heard information about this action that was not filtered by biased Zoll employees. He now knows that Hutchins has a strong case buttressed by a clean prosecution history and an all-encompassing claims construction. Attorney Korn heard that Hutchins expects that these issues will eventually pass on the appellate court as happens in most patent actions.

Since the infringement was filed, notification of its existence has not appeared in Zoll's Form 10K as required by the SEC. Investors do not know that the most promising Zoll products with sales approaching $50 million a year have been exposed since 2002 and continue to be exposed to damage claims. It is obvious that General Counsel Korn expected that Hutchins would abandon his lawsuit. Now that he has had the opportunity to assess the merits of Hutchins' case, it is Attorney Korn's duty to inform the SEC, stockholders and Board members of this exposure that includes sales of the infringing devices over $150 million.

## CONCLUSION

.. It is very awkward for a *pro se* party to get together with a party represented by an attorney to resolve issues because attorneys can not conceive losing a *pro se* case. However in patent cases the playing field is leveled by documented technical facts that

6

are easily communicated to a receptive jury that has the duty to decide genuine issues of fact. Such a jury would easily understand the *AEDPlus* infringing elements.

Months ago Hutchins was in the courtroom when Judge Ponsor suggested to Attorney Jim Martin that further litigation may harden both sides of a civil action that was before him. Judge Ponsor suggested that the parties work towards settlement. Attorney Martin told Hutchins at Christmas that the case had ended with a mutually beneficial settlement. Perhaps it is time for the Court to call for a Hearing to try a little of that same magic.

Respectfully submitted

The Plaintiff
Donald C. Hutchins, Pro Se

Dated: February 27, 2006

1047 Longmeadow Street
Longmeadow, Massachusetts 01106
(413) 567-0606
(413) 739-4060 (facsimile)

### CERTIFICATE OF SERVICE

I, Donald C. Hutchins, 1047 Longmeadow Street, Longmeadow, Massachusetts 01106, hereby certify that I served a copy of the foregoing on the appropriate party by sending a copy by mail to Jordan M. Singer, Esq., Goodwin Proctor LLP, Exchange Place, Boston, MA 02109.

Dated: 2/27/06

Donald C. Hutchins

7