UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD C. HUTCHINS,

    Plaintiff,

        v.

ZOLL MEDICAL CORPORATION,

    Defendant.

CASE NO. 04-30121-MAP

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S
POST-HEARING BRIEF, OR IN THE ALTERNATIVE, RESPONSE TO SAME**

    Defendant Zoll Medical Corporation ("Zoll") submits this short response to plaintiff Donald Hutchins's Brief Controverting Defendant Zoll Medical Corporation's Arguments Made at the Motion Hearing of February 22, 2006 ("Post-Hearing Brief").

    Plaintiff's brief is of course untimely and uninvited, and for that reason it should be stricken, and should not become part of the summary judgment record. *See, e.g.*, *Wild v. Hillery*, 2003 WL 23200305, *3-4 (W.D. Wis. May 29, 2003) (upholding decision to strike plaintiff's untimely supplemental brief in opposition to motion for summary judgment, notwithstanding that leave to file was originally granted). To the extent the Court accepts Hutchins's brief, however, Zoll asks that the Court also accept this short response:

    1.    Hutchins's submission presents no additional evidence, by Affidavit or otherwise, concerning the AED Plus product.

    2.    Hutchins's arguments concerning the AED Plus add nothing to the record, or the argument, already submitted. The Court is by now well aware of Zoll's position that the AED Plus does not use a general purpose computer, as required by every claim of the asserted '685

patent. *See* '685 patent, col. 9, line 45; col. 10, line 40; col. 11, lines 29-30; col. 12, line 42; col. 13, line 23; *see also* Response to Office Action, dated May 28, 1998, at 14 (copy attached as Exhibit F to Declaration of Jordan M. Singer, Docket No. 24) ("These same basic components are essentially recited in all the claims"). The parties appear to agree[1] that as used in the '685 patent,

> The term "general purpose computer" means a computer capable of running multiple unrelated programs, which are selected by the user and loaded into the device. It must feature at least: (1) a central processing unit, (2) one or more input devices that are not specific to any one program, (3) memory, (4) mass storage devices (such as a disk drive) for storing large amounts of data, and (5) one or more output devices.

Zoll's Claim Construction at 1 (March 2, 2005) (Docket No. 10).

3.    The evidence presented clearly demonstrates that the AED Plus does not satisfy this definition (and this evidence is not contradicted by any proper evidence of record). Among other things, the AED Plus does not, and cannot, run multiple *unrelated* programs. *See* Declaration of Gary A. Freeman at ¶ 8 ("Freeman Decl.") (Docket No. 23).[2] Additionally, the user has no ability to select an outside program and load it into the device. *Id.* ¶ 10. Moreover, the AED Plus has no mass storage device (such as a disk drive) for storing large amounts of data. *Id.*, ¶ 8. Rather, like the Battaglia device that plaintiff expressly distinguished during prosecution of the '685 patent, the AED Plus is a portable machine with a "dedicated" microprocessor,

---

[1] As plaintiff again makes clear in his brief, he accepts the definition of "general purpose computer" originally proposed by Zoll. *See* Post-Hearing Brief at 3 ("Hutchins has no problem accepting the definition that Attorney Englander had offered because it fits Hutchins' concept of a general purpose computer").

[2] Despite plaintiff's assertions, the form and content of Mr. Freeman's Declaration is entirely appropriate for consideration on summary judgment. The Declaration is signed and dated with the statement, "I declare under penalty of perjury that the foregoing is true and correct." Freeman Decl., p. 8. The First Circuit has made clear that "an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment." *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 689 (1st Cir. 1993); *see also* 28 U.S.C. § 1746 (noting that any matter permitted to be supported by an affidavit may "with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration … in writing of such person which is subscribed by him, as true under penalty of perjury").

designed to perform a specific emergency medical function, and "is clearly not in any way a personal computer as that term is generally understood." Response to Office Action at 15.

  4.  Plaintiff does not dispute that the AED Plus is a dedicated device. Rather, plaintiff argues in his latest brief that the microprocessor used in the AED Plus "fits the definition" of "general purpose computer" because "it runs such unrelated programs as defibrillation sensing, graphing, CPR speech prompting, CPR graphics prompting, data collection, communication, memory data bank, LCD driver, LED driver, diagnostics and many more separate and distinct programs installed in the AED Plus." Post-Hearing Brief at 3. Plaintiff's assertion is nothing more than a naked allegation, unsupported by affidavits or documentary evidence. Passing that point, however, plaintiff's conclusion regarding the AED Plus's ability to run multiple unrelated programs is incorrect because it confuses the *functions* of a software program with the software program as a whole. The features listed by plaintiff (defibrillation sensing, graphing, speech prompting, etc.) are all functions of the same, single software program run by the AED Plus, in the same way that the ability to save, edit or print a document are all functions of a typical word processing program. These features are not, in themselves, "unrelated" software programs – such as "Word Perfect", "Turbotax", or any of the other thousands of programs that can be loaded into, and run by, a true "general purpose computer." *See* Freeman Decl., ¶¶ 5, 8.

  5.  In his Post-Hearing Brief, plaintiff appears to raise an entirely new allegation against a slightly different product – Zoll's AED Pro. This allegation should fail as a matter of process, for two reasons: (1) it is untimely, as the summary judgment record is closed, and (2) Hutchins supplies no appropriate affidavit *evidence* with respect to the AED Pro. Plaintiff should not, for the first time after the close of summary judgment briefing and argument, raise

3

the specter of infringement by an entirely different product. *See* Fed. R. Civ. P. 56(c) (requiring a grant of summary judgment to be based on "the pleadings, depositions, answers to interrogatories, and admissions ***on file***, together with the affidavits, if any") (emphasis added).

6.     In any event, plaintiff's allegations concerning the AED Pro suffer from the same failings as his accusation of the AED Plus. Plaintiff does not even attempt to compare the claims of the '685 patent to the AED Pro on an element-by-element basis, as he must to prove literal infringement. *See, e.g.*, *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) (each claim limitation must be exactly met by the accused device). Nor does plaintiff provide competent evidence in support of his position, relying instead on unsubstantiated allegations as to how the AED Pro operates, and selected pages from an unauthenticated document. Finally, even if plaintiff's allegations are taken at face value, the AED Pro as described by plaintiff uses neither a "general purpose computer" nor an "interactive display input" as those claim terms have been, and should be, defined. Indeed, plaintiff does not even try to explain how the device he now accuses meets the parties' definitions.[3]

## III.  Conclusion

Plaintiff has been given multiple opportunities to make his case, both in written briefs and at oral argument. Plaintiff has failed to present any competent evidence that the AED Plus infringes his patents or copyrights, or that Zoll breached any contract with plaintiff. Zoll

---

[3] Plaintiff's argument on this topic is limited to the bare assertion that the AED Pro "has a large LCD display and two 'softkeys' that move the LCD cursor. … This cursor keying means fits Attorney Englander's definition of the term 'interactive display input' perfectly." Post-Hearing Brief at 4. The parties' agreed-upon definition of "interactive display input," however, says nothing about display size or a "cursor keying means." *See* Zoll's Claim Construction at 1. Furthermore, plaintiff offers no evidence or argument that the AED Pro uses a "general purpose computer" as defined by the parties.

requests that this Court grant its motion for summary judgment and deny plaintiff's motion for summary judgment.

                                                Respectfully submitted,

/s/ Jordan M. Singer
John C. Englander (BBO # 542532)
Jordan M. Singer (BBO #651068)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
Fax: (617) 523-1231

Attorneys for Defendant
Zoll Medical Corporation

Dated: March 13, 2006

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via facsimile and first class mail to those indicated as non registered participants on March 13, 2006.

                                                /s/ Jordan M. Singer

LIBA/1678845.1