(citing Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)).  Ultimately, to establish infringement, a patentee must demonstrate that "the accused device meets each claim limitation, either literally or under the doctrine of equivalents." Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1273 (Fed. Cir. 2004) (citations omitted).[5]

Since the parties have already agreed upon "the dictionary definitions for the terms of Patent No. 5,913,685 as presented by Zoll's claim construction" (Pl.'s Clarification Brief 2), the court must now compare the claims at issue with the features of Defendant's device.  As previously noted, for the purposes of this litigation, "a general purpose computer"

> means a computer capable of running multiple unrelated programs, which are selected by the user and loaded into the device.  It must feature at least: (1) a central processing unit, (2) one or more input devices that are not specific to any one program, (3) memory, (4) mass storage devices (such as a disk drive) for storing large amounts of data, and (5) one or more output devices.

Although Plaintiff contends that this definition describes the Hitachi SuperH RISC engine #Sh08 that drives the AED Plus, this clearly is not the case.  For example,

---

[5] Because Plaintiff has not presented any argument concerning infringement under the doctrine of equivalents, that issue has been waived. Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372, 1380 (Fed. Cir. 2005).

notwithstanding Plaintiff's argument that the factory <u>could</u> design the accused device to run "multiple unrelated programs,"[6] the fact is it has been designed to run only one.

It is a bedrock principle of patent law that proving literal infringement requires a patentee to show that "the accused device <u>contains</u> every limitation in the asserted claims."  <u>Mas-Hamilton Group v. LaGard, Inc.</u>, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (emphasis added) ("If even one limitation is missing or not met as claimed, there is no literal infringement." (citations omitted)).  The fact that an accused device could contain a missing limitation if programmed differently is irrelevant.

It is equally clear that Plaintiff cannot overcome the agreed upon mass storage requirement by observing that Defendant's <u>RescueNet</u> software permits the AED Plus to connect to an altogether different computer.  <u>See</u> Pl.'s Mem. Controverting Def.'s Statement Undisputed Facts ¶ 11 ("The AED Plus is configured with an IrDA Port capable of . . . using Zoll's <u>Rescue Net</u> network software to store AED Plus rescue data on the largest external disk drives or

---

[6] (<u>See</u> Dkt. No. 15, Ex. D, SuperH, Inc. Handheld Applications (noting the use of SuperH architecture in mobile phones, digital cameras, portable electronic analyzers, and wearable computers); <u>see also</u> Dkt. No. 38, Ex. 1, Jeffway Aff. 2-3 (describing various applications of SuperH techonology).)

network server hard drives.").)  Unlike the '685 patent's "general purpose computer," which "provide[s] guidance . . . for resuscitating a victim <u>under an emergency condition</u>," col.9 ll.46-48 (emphasis added), a general purpose computer can only be used in conjunction with Defendant's device to store rescue date <u>after</u> an emergency condition.

Finally, the undisputed facts also show that Defendant's device does not employ an interactive display input, <u>i.e.</u>, "a device for communicating with a computer which allows a user to respond to options presented by the computer by selecting from a menu displayed on a display screen."  As previously noted, the purpose of this feature is allow rescue personnel to inform the device of the "characteristics of [the] victim relevant to proper performance of CPR techniques."  <u>See, e.g.</u>, col.9 ll.52-57.

Plaintiff notes the accused device's ability to analyze a victim's heart rhythm and suggests that this is proof of its sensitivity to a victim's "characteristics." Unfortunately for Plaintiff, this argument overlooks the parties agreed upon definition of that term, which is limited to factors such as the age and consciousness of the victim.  Since it is undisputed that the AED Plus does not consider these sorts of attributes, a reasonable jury could not conclude that every limitation recited in these claims

23

is present in the AED Plus. See Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1163-64 (Fed. Cir. 2004) (citation omitted).

Defendant's Motion for Summary Judgment with respect to Counts Three through Six was therefore allowed.

B.   Plaintiff's Motion for Summary Judgment.

Having allowed Defendant's Motion for Summary Judgment, the court naturally denied Plaintiff's motion for the same.

### IV. MOTIONS FOR OTHER MISCELLANEOUS RELIEF

A.   Plaintiff's Motion for a Markman Hearing.

Since there was no dispute concerning the proper dictionary definition of the terms at issue, the court determined that there was no need for a Markman hearing and thus denied Plaintiff's motion. See PSC Computer Prods., Inc. v. Foxconn Int'l, Inc., 355 F.3d 1353, 1357 (Fed. Cir. 2004) (affirming district court's decision not to hold Markman hearing in case where meaning of claim terms was not disputed).

B.   Defendant's Motion to Strike the Jeffway Affidavit.

Because the court's consideration of the Jeffway affidavit caused Defendant no prejudice, the court denied Defendant's motion that it be struck.

C.   Plaintiff's Motion to Schedule a Jury Trial.

The court denied this motion in light of its

24

determination that there were no proper issues to be submitted to a jury.

D.   Plaintiff's Motion to Amend his Complaint.

Plaintiff seeks to amend his complaint by adding allegations concerning the allegedly infringing sales of Defendant's AED Pro Defibrillator.  Although this product was first introduced in April 2005 -- two months before Plaintiff moved for summary judgment -- Plaintiff did not file his motion to amend until March 6, 2006.

The Federal Rules of Civil Procedure provide that after a responsive pleading is served, a plaintiff may amend his complaint "by leave of court . . . and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a). Ordinarily, "the leave sought should, as the rules require, be 'freely given.'"  Foman v. Davis, 371 U.S. 178, 182 (1962).  However, if a party moves to amend after the close of discovery and motions for summary judgment have been docketed, "the proposed amendment must be not only theoretically viable but also solidly grounded in the record [and] . . . supported by substantial evidence."  Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 109 (1st Cir. 2002) (quoting Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)).

In this case, Plaintiff's allegations are neither

grounded in the record nor supported by substantial evidence. In fact, Plaintiff never even mentioned the AED Pro's existence until six days after the February 22, 2006 motion hearing. (See Pl.'s Brief Controverting Def.'s Feb. 22, 2006 Arguments 3 ("Recently Zoll added AEDPRO to its rapidly growing family of infringing devices.").)

Because discovery would have to be reopened in order for Zoll to defend itself adequately against the claims set forth in the amended complaint, the allowance of Plaintiff's motion would result in considerable prejudice. Cf. Grant v. News Group Boston, Inc., 55 F.3d 1, 5-6 (1st Cir. 1995) (finding prejudice in case where non-moving party had not yet completed its motion for summary judgment). In addition, in light of Plaintiff's failure to offer an explanation for the late hour of his motion, it would be improper to permit such "undue delay." See States Res. Corp. v. The Architectural Team, Inc., 433 F.3d 73, 83 (1st Cir. 2005) (citing "undue delay" among the adequate reasons for denying a motion to amend (citation omitted)).

E.  Plaintiff's Motion to Compel Discovery.

Plaintiff seeks an order compelling Defendant to produce the AED Plus that it brought to the motion hearing on February 22, 2006. Because this device was not a part of Defendant's presentation and played no part in the outcome

26

of the case, the court denied Plaintiff's motion.

F. <u>Defendant's Motion to Strike Plaintiff's Post-Hearing Brief</u>.

Because the court's consideration of Plaintiff's Post-Hearing Brief caused Defendant no prejudice, the court denied Defendant's motion that it be struck.

## V. <u>CONCLUSION</u>

For the reasons stated above, on March 29, 2006, this court: (1) denied Plaintiff's Motion for Summary Judgment (Dkt. No. 14); (2) allowed Defendant's Motion for Summary Judgment (Dkt. No. 20); (3) denied Plaintiff's Motion to Schedule a <u>Markman</u> Hearing (Dkt. No. 32); (4) denied, as moot, Defendant's Motion to Strike the Jeffway Affidavit (Dkt. No. 39); (5) denied Plaintiff's Motion to Schedule a Jury Trial (Dkt. No. 48); (6) denied Plaintiff's Motion to Amend his Complaint (Dkt. No. 54); (7) denied Plaintiff's Motion to Compel Discovery (Dkt. No. 57), and (8) denied, as moot, Defendant's Motion to Strike Plaintiff's Post-Hearing Brief (Dkt. No. 55).

The clerk is ordered to enter judgment for Defendant on all counts. This case may now be closed.

It is So Ordered.

                                            /s/ Michael A. Ponsor  
                                            MICHAEL A. PONSOR  
                                            U. S. District Judge